UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond Ryan ALEXANDER,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Helmur Alfonso Lazarte VIZCARRA,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Luis Felipe Pino SOLARI,
Defendant-Appellant.

Nos. 83–5279 to 83–5281.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1984.

Decided March 18, 1985.

Ralph C. Hofer, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Michael D. Nasatir, Nasatir & Hirsch, Los Angeles, Cal., for Alexander.

Joseph F. Walsh, Los Angeles, Cal., for Vizcarra.

Yolanda Orozco, Deputy Federal Public Defender, Thomas J. Lannen, Federal Public Defender, Los Angeles, Cal., for Solari.

Before WALLACE, FLETCHER, and REINHARDT, Circuit Judges.

WALLACE, Circuit Judge:

Alexander, Lazarte-Vizcarra (Lazarte), and Solari were indicted for conspiracy to distribute cocaine and conspiracy to possess cocaine with intent to distribute, possession of cocaine with intent to distribute, and the manufacture of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. Initially, Alexander, Lazarte, and Solari entered pleas of not guilty. After the district court denied motions to suppress evidence and for discovery of investigative information and informants' identities, however, they entered conditional pleas of guilty under Fed.R.Crim.P. 11(a)(2), and were convicted. Pursuant to that rule, "the adverse determination of any specified pretrial motion" may be preserved by agreement for review on appeal. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I

On January 18, 1983, Los Angeles police officers noticed the odor of ether, a chemical used in the manufacture of cocaine, emanating from a rental truck. The driver was identified as Marchetti, whom the officers believed was involved in narcotics trafficking in 1978. The police followed the truck to Marchetti's house in Westlake Village. They continued their surveillance, and the next day followed Marchetti as he drove the truck to a remote area of Nipomo, California, where the truck disappeared through a gate into a ranch surrounded by a fence and a grove of eucalyptus trees. The officers could not observe activities on the ranch through the trees. From January 19, 1983 to March 13, 1983, the police conducted periodic overflights with unidentified aircraft of the ranch. The aerial surveillance revealed in great detail the construction of what the officers believed to be a cocaine manufacturing facility.

On January 25, 1983, officers smelled the odor of acetone, another chemical used in cocaine manufacturing, emanating from the same truck while it was parked in Marchetti's driveway. On January 29, Marchetti made a second trip to the ranch in the truck. The officers also observed Marchetti obtain cardboard containers from a supply company that had supplied equipment to illegal laboratories in the past. The officers learned that Marchetti purchased a 60-ton jet hydraulic press of a kind used in illegal laboratories, and observed him loading a heavy object with the same markings as the press onto another truck. On February 8, the officers followed Marchetti as he drove this truck with the crate to the Nipomo ranch.

The police observed Marchetti meet at his home with two men identified with smuggling and cocaine manufacture. One of the men was Jaime Echegoyen, a codefendant in this case. He and his brother Rodolfo, also a codefendant, were connected with cocaine trafficking and had outstanding felony warrants for their arrest at the time the police observed the meetings. The police also received tips from three informants about the construction of an illegal cocaine manufacturing plant on the ranch near Nipomo. Two of the informants had provided reliable information to police in the past.

Armed with this information and other allegations, Los Angeles Detective Bitterolf executed a thirty-page affidavit in support of an application for a search warrant of the Nipomo ranch. On March 15, 1983, a California municipal judge in San Luis Obispo County issued search warrant

# 1325.  On March 16, 1983, police officers served and executed the warrant.  The officers searched the ranch, and discovered approximately 70 pounds of cocaine and a cocaine processing plant.  The officers discovered Lazarte in a mobile home approximately 220 yards from the processing sheds.  They discovered Alexander in a small trailer some twenty yards from the mobile home, and found Solari sleeping in an abandoned automobile parked near the processing sheds.  The police seized numerous items used in cocaine manufacturing from the processing sheds, and seized other items, including empty beer cans, wine bottles, and glasses.  Alexander, Lazarte, and Solari were arrested on the ranch.  On March 18, 1983, a magistrate issued search warrant # 1326 to inspect the clothing of the arrestees.  The clothing contained cocaine residue.

## II

■ Alexander argued to the district court and to us that both California constitutional law and federal constitutional law apply to this action.  The district court concluded that state law did not apply, but that even if it did, the result would be the same.  We review the district court's decision on this issue de novo.  *Cf. In re McLinn*, 739 F.2d 1395, 1398 (9th Cir.1984) (en banc) (district court's interpretation of state law reviewable de novo).

■ Alexander relies on *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), and *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), for the proposition that this court must look to California law to determine the validity of searches and seizures undertaken by California officers if no federal officers are involved.  Whether state or federal standards should apply when evidence seized by state officers is offered in a federal prosecution is an issue that we have left unresolved.  *See United States v. Henderson*, 721 F.2d 662, 665 (9th Cir.1983) (per curiam), *cert. denied*, — U.S. —, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).  Once more, we conclude that we need not

reach this issue.  Even if California law were to apply, it would not change any result we might reach.

In 1982, California voters enacted Proposition 8, "The Victim's Bill of Rights," which amended the California constitution and which provides in part: "relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post-conviction motions and hearings...."  Cal. Const. art. 1, § 28(d).  The government argues that Proposition 8 eliminated the independent bases for exclusion under the California constitution for search and seizure violations, rendering California and federal law identical on these issues.  We agree.  The California Supreme Court recently interpreted Proposition 8, and concluded that the vicarious exclusionary rule under California law was abrogated by the amendment.  *In re Lance W.*, 37 Cal.3d 873, 879, 210 Cal.Rptr. 631, 634, 694 P.2d 744, 747 (1985).  The court concluded that Proposition 8 did not affect the substantive rights granted by the California constitution, but only affected the remedy:

> What would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today, and this is so even if it would pass muster under the federal Constitution.  What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, except to the extent that exclusion remains federally compelled.

*Id.* at 887, 210 Cal.Rptr. at 639, 694 P.2d at 752 (emphasis in original).  *Accord People v. Daan*, 161 Cal.App.3d 21, 22, 27–29, 207 Cal.Rptr. 228, 230–32 (1984).  Thus, we conclude that whether California law applies is immaterial, since whether any evidence must be excluded is judged solely under the standards imposed by the federal Constitution.

■ *Lance W.*, however, applies only to admissibility of evidence gathered in violation of the fourth amendment and its California analog.  The California Supreme Court expressly declined to decide whether

Proposition 8 also applied to other constitutional violations. 37 Cal.3d at 885 n. 4, 210 Cal.Rptr. at 638 n. 4, 694 P.2d at 751 n. 4. Therefore, one issue before us, the government's failure to disclose the identity of its informants, is not controlled by *Lance W.* However, our analysis would be the same under either California or federal law. Neither system requires disclosure when the informant is not a material figure in the conspiracy. *See, e.g., People v. Wilks,* 21 Cal.3d 460, 468–69, 146 Cal.Rptr. 364, 369–70, 578 P.2d 1369, 1374 (1978) (*Wilks*); *Theodor v. Superior Court,* 8 Cal.3d 77, 87–91, 104 Cal.Rptr. 226, 233–36, 501 P.2d 234, 241–42 (1972); *cf. United States v. Ordonez,* 737 F.2d 793, 808 (9th Cir.1984) (authorizing disclosure when informant was central to the conspiracy). Since we conclude in Part VI *infra* that the informants were not central to the conspiracy, but "simply point[ed] the finger of suspicion," *Wilks,* 21 Cal.3d at 469, 146 Cal. Rptr. at 370, 578 P.2d at 1374, the result would be the same under either federal or California law.

The challenges in this appeal may be grouped into three general categories: (1) challenges to the sufficiency of the warrant authorizing the search of the Nipomo Ranch (# 1325); (2) challenges to the execution of that search warrant; and (3) challenges to the district court's denial of motions to discover investigative information and to compel disclosure of the identities of the government's informants.

### III

#### A.

Alexander asserts that the warrantless overflights of the Nipomo ranch were unlawful because they violated his reasonable expectation of privacy. He argues that because the information gleaned from the overflights formed a substantial part of the allegations in Bitterolf's affidavit, search warrant # 1325 was tainted with illegality and all evidence seized pursuant to it must be suppressed. The legality of overflights poses difficult questions of fourth amendment law. We upheld warrantless over-

flights under somewhat different circumstances in *United States v. Allen,* 675 F.2d 1373, 1380–81 (9th Cir.1980), *cert. denied,* 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981) (*Allen*); *cf. Dow Chemical Co. v. United States,* 749 F.2d 307 (6th Cir.1984) (upholding warrantless aerial surveillance for EPA violations). Unfortunately, the sparse factual record in this case, resulting largely from the conditional plea procedure, does not define clearly under what circumstances these overflights took place.

██ Although in another case the lack of an adequate record in a conditional plea procedure case may result in a trap for the unwary party that has the burden of proof, that result need not obtain in this case. Even if we assume that the overflights violated the defendants' privacy interests, the fruits of the search undertaken pursuant to the warrant need not be suppressed. We have developed a two-pronged test for the analysis of search warrants obtained by affidavits allegedly tainted with information illegally obtained by law enforcement officers.

> "While the ultimate burden of proof is on the government to show the absence of taint, the defendant must first establish a factual nexus between the illegality and the challenged evidence. The mere establishment of an illegal search does not place upon the Government the burden of affirmatively proving that each and every piece of evidence is free of taint."

*United States v. Spetz,* 721 F.2d 1457, 1468 (9th Cir.1983), *quoting United States v. Allard,* 600 F.2d 1301, 1305 (9th Cir.1979), *quoting in turn United States v. Choate,* 576 F.2d 165, 186 (9th Cir.) (Hufstedler, J., concurring in part and dissenting in part), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978). After the nexus is established, the burden shifts to the government to show that there was independent probable cause for the search warrant. *Spetz,* 721 F.2d at 1468; *Allard,* 600 F.2d at 1305. *Accord United States v. Henderson,* 721 F.2d 662, 665 (9th Cir.1983)

(per curiam), *cert. denied,* —— U.S. ——, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984); *United States v. Miroyan,* 577 F.2d 489, 494 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978); *Howell v. Cupp,* 427 F.2d 36, 38 (9th Cir.1970). Simply stated, "[w]hen an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." *James v. United States,* 418 F.2d 1150, 1151 (D.C. Cir.1969). Other circuits apply a similar test. *See, e.g., United States v. Bosby,* 675 F.2d 1174, 1179–80 (11th Cir.1982); *United States v. Korman,* 614 F.2d 541, 547 (6th Cir.), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980); *United States v. DiMuro,* 540 F.2d 503, 515 (1st Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Radford,* 361 F.2d 777, 782–83 (4th Cir.), *cert. denied,* 385 U.S. 877, 87 S.Ct. 158, 17 L.Ed.2d 105 (1966); *cf. Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Because our resolution of this issue would dispose of this appeal, we do not reach whether the overflights violated privacy interests or whether the nexus prong was established.

■ Lazarte and Solari join Alexander in challenging the sufficiency of the warrant. The central question is whether the other allegations in the affidavit independently establish probable cause. The magistrate's determination of probable cause is treated with great deference and is not reviewed de novo. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) *(Gates ); United States v. Seybold,* 726 F.2d 502, 503 (9th Cir.1984). We apply the totality of circumstances test. *Gates,* 103 S.Ct. at 2332; *United States v. Estrada,* 733 F.2d 683, 684–85 (9th Cir.) (test applied retroactively), *cert. denied,* —— U.S. ——, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984).

After examining Bitterolf's affidavit, we conclude that probable cause existed independent of the allegations obtained from the overflights. Subtracting the overflight information, the affidavit still presented the magistrate with: (1) repeated observations by police officers of the transport of chemicals used in cocaine manufacturing to the ranch; (2) processing equipment of a type used in cocaine manufacturing was delivered to the ranch; (3) the driver of the vehicle and persons with whom he associated in connection with these transactions had engaged in cocaine trafficking in the past; (4) three informants, at least one of whom had been on the ranch, advised the police that a cocaine factory was being constructed at the ranch; and (5) two of those informants provided reliable information in the past. Under the totality of the circumstances, we conclude that the magistrate had a substantial basis for finding probable cause independent of the overflights. *See Gates,* 103 S.Ct. at 2332.

### B.

Alexander also attacks the particularity of warrant # 1325. He asserts that the warrant is overbroad because it does not mention the small trailer within which he was found, and because it authorized the search of the entire forty acre ranch rather than a smaller portion of it. The warrant did command the search of the entire ranch, and the search of several buildings. The warrant specifically listed a white mobile home, several abandoned vehicles and two sheds. The warrant also commanded the officers to search "all buildings, outbuildings, garages, yard areas, trash containers, storage areas and containers used in connection with or within the curtilage of said premises and buildings."

■ We discuss first the authorization to search the entire ranch. The particularity requirement inquires into the sufficiency of the description of the premises to be searched, and tests whether "the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). Alexander does not contend that

the ranch was insufficiently identified. His challenge to the search of the whole ranch, rather than a part of it, is really a challenge based on lack of probable cause. *See United States v. Whitney,* 633 F.2d 902, 907 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). Thus, we must determine whether the magistrate had a substantial basis for concluding that probable cause existed to search all of the buildings on the ranch. We must uphold the warrant on this basis if probable cause existed to search each building, or if all the buildings on the ranch were under common control. *See id.* at 907–08; *see also United States v. Gonzales,* 697 F.2d 155, 156 (6th Cir.1983) (per curiam).

▇ In *Whitney,* the defendant challenged a warrant that described the premises to be searched as a single dwelling, when it actually was composed of two apartments although the defendant had full control of both. 633 F.2d at 907–08. We concluded that the record furnished no evidence to suggest that the officers were aware of the two dwellings, and upheld the warrant. *Id.* at 908. Similarly, a warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect. *See United States v. Whitten,* 706 F.2d 1000, 1008 (9th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) (*Whitten*); *United States v. Gilman,* 684 F.2d 616, 618 (9th Cir.1982).

▇ In this case, probable cause existed to search the whole ranch. The ranch was rural, undeveloped, and without permanent structures. Alexander owned the entire ranch, and it was under his admitted control. The fact that the occupants did not all sleep under the same roof, without more, does not establish subdivision of the property for purposes of occupancy or control. *See Whitten,* 706 F.2d at 1008. We conclude that the warrant was not overbroad by authorizing the search of the entire ranch.

▇ Similarly, the warrant's failure to mention the small trailer does not make it overbroad. The officers' access to the ranch was limited. The contraband was of a type that could be hidden easily in any structure. The most reasonable place to look for contraband on rural, undeveloped acreage is in the structures on that acreage. A warrant authorizing the search of any building, particularly temporary structures within which the contraband could be easily hidden, was reasonable under the circumstances and not overbroad. Alexander's rights were not violated by the search of the small trailer.

## IV

Along with the cocaine and the processing equipment, the police seized a variety of seemingly innocuous objects: beer cans, empty wine bottles and drinking glasses. The officers dusted these objects at the scene for fingerprints, and the objects revealed the prints of Alexander, Lazarte, and Solari. Alexander challenged the seizure of these objects as being outside the scope of the warrant. The district court concluded that these objects were in plain view during the search and admissible under that doctrine. The objects apparently were strewn about the floor of the main processing shed, and clearly were plainly visible. We need not decide, however, whether the district court correctly applied the plain view doctrine. The search was valid for a separate reason.

▇ The search warrant authorized the officers to search for "items or articles of personal property tending to show identity of persons in ownership, dominion or control of said premises...." The government urged both the district court and us to find that the seized items were within the scope of the warrant. The district court concluded that including these items within the warrant would be to read the warrant too broadly. *See, e.g., United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir.1982) (warrant authorizing search for any papers showing tax evasion was too broad). We disagree. The search warrant

must be read in a common-sense fashion. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In *United States v. Honore*, 450 F.2d 31, 33 (9th Cir.1971), *cert. denied*, 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972), we held that a warrant that authorized a search for "articles ... tending to establish the identity of the persons in control of the premises" was sufficiently particular. *See also Whitten*, 706 F.2d at 1009 ("any other papers indicating the ownership or occupancy of said residence"). The similarity of language between the warrant in this case and the warrants we have upheld in prior cases forces the conclusion that warrant # 1325 was sufficiently particular with respect to these seized items.

■ Having concluded the search warrant was valid, our only remaining inquiry is whether the seizure of these items was properly within the command of the warrant. "The search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed." *Gurleski v. United States*, 405 F.2d 253, 258 (5th Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2127, 23 L.Ed.2d 765 (1969), *quoted in United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978). The district court specifically found that the officers acted in good faith when they dusted and seized these items and we can see nothing in the record to the contrary. We already have concluded that the seizure of these items was within a reasonable interpretation of the warrant. *See id.* The examination and seizure of the beer cans, wine bottles and drinking glasses did not constitute a general, rummaging, or exploratory search. These items were within the main cocaine processing shed and in immediate proximity to the focus of illegal activity. Fingerprint evidence may be probative of who had access to the shed and who had knowledge of the illegal activities taking place inside it. The seizure of these items and dusting them for fingerprints was within the scope of the warrant authorizing the officers to search for items showing the identity of persons in control of the cocaine processing shed.

## V

Alexander also argues that his warrantless arrest was unlawful. When the searching officers entered the ranch, Alexander was in the small trailer with a woman. Alexander contends that he was arrested at the outset of the search, before there was probable cause for his arrest. The government contends that Alexander was "detained" pending execution of the warrant and arrested subsequent to the search.

■ The district court found that Alexander was initially detained rather than arrested. Since it appears from the arguments of the parties that their disagreement related to the facts rather than to any legal questions or any mixed question of fact and law, we review the district court's finding under the clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). This standard applies even though the district court only examined written affidavits. *See Lundgren v. Freeman*, 307 F.2d 104, 113–15 (9th Cir. 1962).

■ The evidence in the record as to the precise chronology of events is sparse and ambiguous. In support of his motion to suppress evidence obtained pursuant to the search, Alexander submitted an affidavit which merely stated that he was residing in the trailer when he was arrested. In a second affidavit, Alexander's counsel stated only that his client's arrest was effected without a warrant. No affidavit submitted in support of the motion contained any factual allegations supporting the claim that Alexander's arrest occurred prior to completion of the search. Detective Bitterolf's declaration, submitted by the government in opposition to Alexander's motion, stated that Alexander was "taken into custody" when the searching officers began to execute the warrant. The district court apparently concluded

that the phrase "taken into custody," as contained in the declaration, referred to an initial detention rather than an arrest. In view of Alexander's failure to introduce any evidence tending to show that he was arrested at the outset of the search rather than detained, we are unable to conclude that the district court's finding was clearly erroneous. Thus, the detention of Alexander pending the outcome of the search was valid. *See Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981).

■■■ After the search, Bitterolf approached Alexander, advised him of his rights, and elicited an admission that Alexander owned the ranch. The district court found that probable cause existed for Alexander's arrest. We review the district court's finding of probable cause to arrest de novo. *United States v. McConney,* 728 F.2d at 1203. Alexander's ownership, his proximity to the processing shed, and the small amount of cocaine found in the trailer established sufficient probable cause for his arrest. We agree with the district court's conclusion.

## VI

■■■ In his appeal, Alexander challenges the district court's denial of his motions to discover information about the aerial surveillance and to cross-examine Bitterolf on his affidavit opposing Alexander's motion to suppress. Alexander also challenges the sufficiency of search warrant # 1326, which authorized the search of his clothing after he was arrested. Alexander entered a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2). The agreement did not "reserv[e] in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." *Id.* Rather, the parties stipulated four issues for appeal to this court. The three issues mentioned above were not included in the plea bargain, and we decline to rule on them. The issues presented in appeals from convictions based on conditional pleas must be defined precisely because both the government and the defend-

ants must agree to the stipulation. We are obliged to hold Alexander to his bargain.

■■■ Lazarte challenges the district court's denial of the motion to compel the disclosure of the identity of the government's informants. The district court's denial of a motion to compel the disclosure of informants' identities is reviewed for an abuse of discretion. *See United States v. Long,* 715 F.2d 1364, 1367 (9th Cir.1983); *United States v. Anderson,* 509 F.2d 724, 730 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975).

■■■ The decision whether to compel disclosure requires a balancing of a defendant's need for the information with the government's interest in protecting its sources. *See Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). In this case, the record reveals that only one informant actually visited the ranch, and the other two based their information on other sources. A defendant has the responsibility to demonstrate the need for the disclosure. *United States v. Tham,* 665 F.2d 855, 859 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982). As the district court found, there was no showing as to what the informants observed or how it would be helpful to the defense. Thus, this is not a case in which the informants were central to the conspiracy and necessary to the adequate preparation of a defense. *See United States v. Ordonez,* 737 F.2d 793, 808 (9th Cir.1984); *United States v. Anderson,* 509 F.2d at 730. The record supports the district court's conclusions. The government also presented an *in camera* submission. A review of that submission does not change our conclusion. The district court did not abuse its discretion by denying Lazarte's motion.

AFFIRMED.