**UNITED STATES of America, Plaintiff,**

v.

**Alex YUNG a/k/a Glen M. Hemsley, James M. Peterson, Steven J. Hemsley, James M. Peterson, IV, Conrad L. Caldwell, Edward T. Skinner, Dan E. Gibson, Raymond J. Stenson, Joseph E. Scheckel, Mary W. Wilson, and Robert D. Scott, Defendants.**

**Crim. A. No. 91–20049–01.**

United States District Court, D. Kansas.

Feb. 3, 1992.

Julie A. Robinson, Asst. U.S. Atty., Christopher Cardani, U.S. Dept. of Justice, Tax Div., Crim. Enforcement Section, Washington, D.C., for U.S.

R. Bruce Kips, Fairway, Kan., for Alex Yung.

J. Charles Droege, Overland Park, Kan., for James M. Peterson.

Larry C. Pace, Kansas City, Kan., for Steven J. Hemsley.

Grant W.P. Morrison, Morrison, Neeleman & Cramer, Salt Lake City, Utah, J. Steven Schweiker, Overland Park, Kan., for James M. Peterson, IV.

Robert W. Manske, Olathe, Kan., for Conrad L. Caldwell.

Charles R. Harvey, Overland Park, Kan., for Edward T. Skinner.

Thomas L. Boeding, Kansas City, Kan., for Dan E. Gibson.

David Phillips, Kansas City, Kan., for Joseph E. Scheckel.

Charles A. Hallberg, Sherrill, Iowa, Zygmunt J. Jarczyk, Kansas City, Kan., for Mary W. Wilson.

Robert A. DeCoursey, Kansas City, Kan., for Robert D. Scott.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on motions to suppress filed by defendants Dan E. Gibson (Doc. # 195), Alex Yung (Doc. # 131 and # 210), Steven J. Hemsley (Doc. # 104) and Edward T. Skinner (Doc. 146). A hearing was held on the motions on December 2, 1991, and defendant Gibson was given additional time to file a supplemental brief on his motion. Having considered the arguments presented by the parties, the court makes the following findings and order.

### I. *Defendant Gibson*

On February 27, 1990, Internal Revenue Service ("IRS") Criminal Investigation Division Special Agent Douglas Handley ("Handley") applied for a warrant to search defendant Gibson's offices located at 908 West College, Suite A, Independence, Missouri. In support of the application, Handley filed a seventeen-page affida-

vit setting forth the background of his investigation and alleging probable cause to believe that Gibson had committed violations of 18 U.S.C. § 371 (conspiracy to defraud the United States). The application further included an exhibit describing the property to be seized:

1. Originals and copies of domestic and foreign trust contracts, indentures, agreements, certificates, minutes of trustees, and trust correspondence, and related documents.

2. Originals and copies of trust accounting records, including workpapers, ledgers, journals, notes, checks and other banking instruments, memoranda, and correspondence for the taxable year beginning January 1, 1985, and continuing to the present.

3. Lists of trust customer's and client's names, addresses and telephone numbers.

4. Records of payments received from trust clients, including workpapers, ledgers, journals, receipts, invoices, bank account statements, checks, deposit tickets, memoranda, and correspondence for the taxable year beginning January 1, 1985, and continuing to the present.

5. Electronic equipment, such as computers, printers, word processors, printouts, magnetic storage media, software and related manuals used to generate and/or store the information described in items 1, 2, 3, and 4 of this exhibit.

6. Mechanical sealing devices of trusts, individuals, and other organizations, used to affix seals and notarizations to trust documents.

7. Retained copies of Internal Revenue Service forms including forms SS–4, W–8, 1040, 1041S, 1041, and 1040NR, along with related and supporting schedules prepared for trust purchasers and clients for taxable years beginning January 1, 1985, and continuing to the present.

8. Membership agreements for members of IBA (International Business Association) or any other organization promoting the sale of trusts, dated on or after January 1, 1985.

9. Records of payments made on or after January 1, 1985, for sales of trusts or the payment of commissions and fees to salesmen and others, paid in connection with the sale of trusts and related services.

10. Video tapes, audio tapes, photographs, pamphlets, brochures, and other promotional material used to promote the sale of domestic and foreign trust organizations.

11. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to utility and telephone bills, and canceled envelopes.

Following issuance of the search warrant, Handley, accompanied by other government agents, executed the warrant and obtained numerous items of evidence.

Defendant Gibson, appearing pro se, now seeks suppression of the evidence on various grounds.

### A. Collateral estoppel

■ The majority of arguments now raised by Gibson were previously asserted in a pre-indictment motion to suppress evidence and return property filed by Gibson and his co-tenants with the United States District Court for the Western District of Missouri on March 13, 1990. That motion was denied by Judge Dean Whipple in a well-reasoned opinion filed on July 17, 1990.

In response to Gibson's current motion to suppress, the government argues that the doctrine of collateral estoppel precludes Gibson from reasserting the arguments presented in his first motion to suppress. "A party is generally estopped from relitigating an issue decided against him or her in a prior lawsuit when (1) the issue is identical to one presented in the prior adjudication; (2) the prior adjudication resulted in a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the prior adjudication; and (4) the estopped party had a full and fair opportunity to litigate the issue in the prior suit." *United States v. Rosenberger*, 872 F.2d 240, 242 (8th Cir.1989).

The court finds that Gibson is collaterally estopped from reasserting the arguments

previously presented and ruled upon by Judge Whipple. Five of the issues now presented by Gibson in his motion to suppress are identical to those presented by Gibson to Judge Whipple in the initial motion. Further, Gibson received a judgment on the merits of his initial motion. Finally, a review of Judge Whipple's opinion gives every indication that Gibson had a full and fair opportunity to litigate the five issues presented in his initial motion. Accordingly, the court finds that each of the prerequisites for application of the collateral estoppel doctrine have been met. *Id.*

Although several federal courts have held that the doctrine of collateral estoppel can be used to prevent a criminal defendant from relitigating the lawfulness of searches and seizures, *Rosenberger*, 872 F.2d at 242; *United States v. Thoresen*, 428 F.2d 654, 667 (9th Cir.1970); *United States v. Levasseur*, 699 F.Supp. 965, 980–82 (D.Mass.1988), the Tenth Circuit has never addressed this issue. Accordingly, out of an abundance of caution, the court will briefly discuss each of the issues now presented by Gibson, including those previously raised.[1]

### B. Probable cause for issuance of warrant

Gibson first argues that there was a lack of probable cause to issue the search warrant because, in obtaining the warrant, "Handley made materially false statements with reckless disregard for the truth." Specifically, Gibson argues that: (1) Handley's affidavit stated that the items to be seized were "concealed" at the building when in fact the subsequent search "proved that nothing at the address was found to be concealed or hidden"; (2) certain of Handley's affidavit statements were based upon his experience and not specific testimony concerning Gibson; (3) the affidavit did not state that the building contained multiple occupants or was residential in nature; (4) nothing in the affidavit indicated that Gibson had conspired to

commit a crime; (5) the affidavit erroneously alleged that Gibson had sponsored trust sales seminars in Paola and Louisburg, Kansas; (6) the affidavit statement alleging that informant information had been verified was unsupported; (7) the affidavit statements were misleading as to the nature of the conversations between Gibson and undercover agent Lucy Rangel; (8) the affidavit contained no information indicating that the trusts offered or used by Gibson were illegal; and (9) the affidavit failed to state that the occupants of the building were engaged in activities protected by the First Amendment.

In reviewing the validity of a search warrant, the court must determine "whether, under the totality of the circumstances presented in the affidavit, the magistrate had a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found in the place to be searched." *United States v. Cook*, 949 F.2d 289, 292 (10th Cir.1991). Stated differently, the duty of this court "is simply to ensure the magistrate had a substantial basis for concluding probable cause existed." *United States v. Parrish*, 925 F.2d 1293, 1296 (10th Cir.1991).

 Based on the totality of the circumstances presented in the affidavit, the court finds that probable cause existed for the issuance of the search warrant. Handley's affidavit indicates that he had been conducting a long-term investigation of an alleged nationwide conspiracy to promote and sell sham domestic and foreign trust organizations used by purchasers to evade federal income taxes. After detailing the background of the conspiracy and the nature of the trusts, the affidavit further indicates that defendant Gibson was a salesman for the trusts and that a trust sales seminar was held at Gibson's office during the week of February 19, 1990. Finally, the affidavit indicates that Gibson had agreed to meet an undercover agent at his office on March 2, 1990, to discuss the purchase of a trust. In light of this infor-

---

**1.** The court notes, however, that it agrees with all of the findings and conclusions of Judge Whipple.

mation, and in light of Handley's experience in investigating individuals involved in promotion and sale of illegal tax shelters, the court is convinced that the magistrate had a substantial basis for concluding that evidence of a crime would be found at the premises targeted by the search warrant.

Many of Gibson's arguments appear to be directed at alleged technical deficiencies of the warrant. As the Supreme Court has made clear, however, search warrants and supporting affidavits "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Reviewing the warrant and affidavit in light of Gibson's arguments, the court finds nothing that would serve to invalidate the warrant and subsequent search. *Id.*

Finally, the court rejects Gibson's arguments that Handley lied in his affidavit. Although Gibson is adept at construing each factual situation in a light most favorable to his own interests, the court finds no credible evidence to support Gibson's assertion that Handley lied to the magistrate in obtaining the warrant.[2] *See Forster v. County of Santa Barbara*, 896 F.2d 1146, 1148 (9th Cir.1990) (party challenging affidavit supporting warrant must support allegations of deliberate falsehood with offer of proof).

C. The search exceeded the area limitations of the warrant

Gibson next argues that the search executed by Handley and the other agents exceeded the area limitations set forth in the search warrant. In particular, Gibson alleges that the building at 908 West College contains two "apartments" which are designated "A" and "B."[3] Suite A, Gibson alleges, "had multiple, separate, tenants who occupied, and expected privacy, in their own exclusive space." Further, Gibson alleges that the basement of the building, which was searched by the agents, "is not a normal part of the rental" of Suite A and should not have been searched.

■ The court first turns to Gibson's argument that the existence of multiple occupants or tenants in Suite A precluded the officers from searching the entire unit. In construing this argument, the court assumes that Gibson is in essence asserting that the warrant failed to describe with sufficient particularity the place to be searched.[4] A search warrant complies with the particularization requirement of the Fourth Amendment if the officers executing the warrant "can with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925).

■ In *State v. Alexander*, 41 Wash. App. 152, 704 P.2d 618 (1985), a case involving facts analogous to the case at bar, the Court of Appeals of Washington adopted the "community living unit" rule described in 2 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 4.5(d) at 79–81 (1978). That rule, which applies "where several persons or families occupy the premises in common rather than individually," *Alexander*, 704 P.2d at 620, allows the government to use a single warrant describing the entire premises so occupied to validly search the entire premises. *Id.*

Although the "community living unit" rule, as referred to in LaFave, *supra*, does not appear to have been expressly adopted by the federal courts, the underlying theory has in fact been adopted by numerous

---

**2.** Even if Gibson's assertions were true, the court finds that the affidavit nonetheless contained sufficient evidence to establish probable cause. *See United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir.1990).

**3.** Although Gibson characterizes the unit as an apartment, the credible evidence in this case indicates that the unit was used primarily for business purposes.

**4.** Aside from his argument concerning the search of the basement, Gibson cannot reasonably argue that the officers exceeded the scope of the warrant by searching premises not covered by the warrant. Specifically, the warrant refers to "908 West College, Suite A." Regardless of Gibson's assertion that this was in fact subdivided into individual units, the fact remains that the officers confined their search to Suite A.

federal courts. *See, e.g., United States v. Ayers,* 924 F.2d 1468, 1480 (9th Cir.1991); *United States v. Alexander,* 761 F.2d 1294, 1301 (9th Cir.1985); *United States v. Gonzalez,* 697 F.2d 155, 156 (6th Cir.1983); *United States v. Main Street Distrib., Inc.,* 741 F.Supp. 353, 357 (E.D.N.Y.1990); *Bates v. City of Ft. Wayne, Ind.,* 591 F.Supp. 711, 721 (N.D.Ind.1983).

■ The court finds that the facts of the case at bar place it squarely within the "community living unit" rule set forth in *Alexander.* Specifically, the evidence indicates that the alleged tenants of Suite A all shared the same bathroom, kitchen, and other common areas. No evidence was introduced indicating that any of the bedrooms in Suite A were self-contained living units. Further, there has been no showing by defendant Gibson that the building had multiple mailboxes, multiple telephone numbers, or multiple utility hook-ups. In short, the overwhelming evidence indicates that Suite A was a single living/work unit occupied by several persons. The court therefore rejects Gibson's assertion that the search warrant failed to adequately describe the premises to be searched.

■ Even assuming, for purposes of argument, that Suite A contained multiple units and was thus outside of the "community living unit" rule, the court finds that the search was proper for other reasons. First, there was no evidence introduced indicating that Handley or the other agents knew or should have known of the alleged multi-tenant character of Suite A prior to executing the warrant. *See United States v. Whitney,* 633 F.2d 902, 908 (9th Cir. 1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981); *Main Street Distrib., Inc.,* 741 F.Supp. at 357. Second, the affidavit of Handley indicates that the entire premises were under suspicion of illegal activity. *See United States v. Alex-*

*ander,* 761 F.2d at 1301. Execution of the warrant verified Handley's suspicion: trust-related documents were found throughout Suite A and on all three computers seized. Finally, the evidence available to Handley at the time of the search indicated that defendant Gibson exercised dominion over the entire premises of Suite A, including the basement. *Id.* The court therefore concludes that the search warrant was valid.

■ The court now turns to Gibson's argument that the officers exceeded the area limitations of the warrant by searching the basement. Judge Whipple, in his order denying Gibson's initial motion to suppress, discussed this identical argument:

> In the instant case, the search of the basement was clearly reasonable. As previously noted, the warrant stated that "Suite A" was the area to be searched, but it did not state anything such as "and the basement or cellar." Despite this minor misdescription, it was not unreasonable for the officers executing the warrant to assume that the search of Suite A included the basement. (citation omitted).

*In re Search of 908 West College, Suite A,* No. 90–1016M–01 (W.D.Mo. July 17, 1990). Reviewing the evidence presented by Gibson in the instant motion, the court agrees with Judge Whipple that the officers acted reasonably in searching the basement. *See United States v. Judd,* 687 F.Supp. 1052, 1057–58 (N.D.Miss.1988), *aff'd,* 889 F.2d 1410, *cert. denied,* 494 U.S. 1036, 110 S.Ct. 1494, 108 L.Ed.2d 629 (1990). Gibson's argument is therefore rejected.

D. Compliance with 18 U.S.C. § 3109

■ Gibson argues that Handley and the other officers who searched Suite A forcibly entered the premises [5] in violation of 18 U.S.C. § 3109.[6] Although Gibson admits

---

**5.** Defendant Gibson has made no showing that the executing officers actually caused physical damage when they entered the premises.

**6.** The statutory standard referred to by Gibson requires officers to follow a "knock and announce" procedure when searching a residence:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a per-

that the officers announced their authority and purpose, he apparently claims that the officers did not wait a sufficient amount of time prior to their entry and thus did not have reason to believe that they were refused admittance.

In rejecting this argument, Judge Whipple found that Suite A was used primarily by Gibson and the other occupants as an office. Accordingly, Judge Whipple held that the requirements of section 3109 were not applicable to the search of Suite A. Having reviewed the evidence presented at the hearing on the instant motion, the court agrees with Judge Whipple. Despite the fact that Gibson and the others may have stayed overnight at Suite A,[7] the fact remains that the weight of the evidence indicates that the day-time activities of Suite A were focused exclusively on work activities. Further, as noted by Judge Whipple, the occupants commonly referred to Suite A as an "office" and not a "residence."

Even assuming that Suite A was a residence, the court finds no merit to Gibson's argument. In *United States v. Ruminer*, 786 F.2d 381 (10th Cir.1986), the Tenth Circuit Court of Appeals discussed section 3109's denial of admittance requirement:

> "The time that § 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on factual determinations made by the trial court." (citations omitted). Courts have upheld the validity of searches where the delay was one minute, thirty seconds, fifteen to twenty seconds, ten seconds, and forcible entry immediately after announcement has been upheld where there was likelihood of an attempt to escape, to resist, or to destroy evidence. (citations and footnotes omitted). A perusal of the cases shows the futility of fixing a hard and fast rule. The rule is not an inflexible one.

*Ruminer*, 786 F.2d at 383–84.

Notwithstanding the evidence presented by defendant Gibson, the court finds the most believable evidence to be that of

agent Handley. Based upon Handley's testimony, the court finds that the officers knocked on the door of Suite A and announced their authority and purpose. Further the court finds that the officers waited a reasonable amount of time without receiving any type of response from the occupants of Suite A. In particular, the court notes that none of the occupants attempted to verbally respond to the officers' announcement. Accordingly, the court finds the officers had reason to believe that they were refused admittance before they actually entered Suite A. *Id.*

E. Failure of warrant to describe the items to be seized with sufficient particularity

■ Gibson next argues that the search warrant failed to describe with particularity the items to be seized. Specifically, Gibson asserts that the warrant was overly broad because it allowed for the seizure of all trusts rather than "illegal" trusts.

In *United States v. Snow*, 919 F.2d 1458 (10th Cir.1990), the Tenth Circuit Court of Appeals succinctly described the Fourth Amendment's particularity requirement:

> Under the Fourth Amendment, a search warrant must describe the items to be seized with sufficient particularity to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985).

*Snow*, 919 F.2d at 1461.

The court rejects, as did Judge Whipple, defendant Gibson's overbreadth argument. The search warrant in the instant case authorized the executing officers to seize eleven categories of items. Of these elev-

---

son aiding him in the execution of the warrant.

7. The court notes that none of the occupants testified that Suite A was their full-time residence.

en categories, ten were specifically related to trusts or trust customers. Further, several of the categories included date restrictions. Finally, one of the categories of trust-related items made specific reference to International Business Association, an organization allegedly involved in the criminal activity. In no way did the warrant authorize an unconstitutional "general, exploratory rummaging," *id.,* or allow the executing officers to exercise their discretion in deciding what to seize.[8] *See In re Search of Kitty's East,* 905 F.2d 1367, 1375 (10th Cir.1990); *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988).

### F. Seizure of evidence beyond the scope of the warrant

Gibson asserts that Handley and the other executing officers went beyond the scope of the search warrant because items not listed in the warrant were seized. In particular, Gibson alleges that Handley's labeling of certain seized items as "miscellaneous" or "miscellaneous trust records" allowed the officers to "cove[r] the evidence of a general search and veritable fishing expedition...." Further, Gibson asserts that many items, such as videotapes, were seized despite the fact that they were not trust-related.

■ The court rejects Gibson's argument. First, as noted by Judge Whipple, the characterization of the seized items in the inventory list is irrelevant to the question of whether they fall within the scope of the search warrant. Notwithstanding Gibson's assertions, the evidence introduced in this matter indicates that the executing officers seized only those items that appeared to be within the scope of the warrant. Second, the fact that some seized items turned out not to be within the scope of the warrant does not require invalidation of the entire search. *United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). The executing officers in this case were required to seize, among other things, videotapes and computer files. Such items clearly could not be individually reviewed prior to completion of the search.[9] *Id.* In summary, the court finds that the executing officers acted in good faith in attempting to stay within the boundaries of the warrant and that the extensive seizure of certain types of items "was prompted largely by practical considerations and time constraints." *Marvin v. United States,* 732 F.2d 669, 675 (8th Cir. 1984).

### G. First Amendment violations

■ Lastly, Gibson argues that the search violated his First Amendment rights.[10] Specifically, Gibson alleges that items protected by the First Amendment were seized by the officers. In support of his argument, Gibson alleges that he is the pastor of the New Covenant Assembly ("NCA"), a church which regularly meets at the premises searched. Further, Gibson alleges that he is a member of the Last Days Educational Association ("LDEA"), "an unincorporated, religious based, educational association...."[11] Gibson alleges that various items relating to NCA and LDEA, including membership lists and computers containing INFOGRAM files, were seized by the officers.

The court rejects Gibson's argument on the current evidentiary showing. Although Gibson refers to broad categories of allegedly protected items, he has failed to make a specific showing of items seized that would in turn allow the court to make an informed decision with respect to each item.[12] *Cf. Stanford v. Texas,* 379 U.S.

8. The court agrees with Judge Whipple that it is irrelevant that the warrant did not refer to "illegal" trusts.

9. The court notes that Handley testified at the hearing that many of the seized items have since been returned to Gibson.

10. This is the only argument Gibson did not assert in his first motion to suppress.

11. Although not specifically alleged, it appears that Gibson is a founding member of LDEA. Further, it appears that LDEA was headquartered in Suite A.

12. The court notes that the government has also been less than forthcoming in describing the seized items. Specifically, the court has not been provided with a list of the seized items nor

476, 479, 485–86, 85 S.Ct. 506, 508, 511–12, 13 L.Ed.2d 431 (1965); *United States v. Heldt*, 668 F.2d 1238, 1257 n. 27 (D.C.Cir. 1981) (rejecting First Amendment argument with respect to specific seized items), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. 1007 Morningside Ave.*, 625 F.Supp. 1343, 1349–50 (N.D.Iowa 1985) (ordering return of seized First Amendment material). Accordingly, the court finds that Gibson has failed to meet his burden of demonstrating the invalidity of the search, *see United States v. Nunez*, 658 F.Supp. 828, 835 (D.Colo.1987), and the motion to suppress is denied. At the time of trial, however, the court will entertain a renewed motion to suppress directed at specific items seized if offered into evidence.

## II. Defendant Yung

■ On December 16, 1988, agent Handley and other government agents obtained and executed a search warrant for defendant Yung's house and office at 10644 Biscay Way, Rancho Cordova, California and defendant Hemsley's residence and office at Apartment 59, 10700 Coloma Road, Rancho Cordova, California. Defendant Yung now seeks suppression of evidence seized during both searches. Yung claims that, for various reasons, there was a lack of probable cause to issue the search warrants.

The court finds no merit to Yung's arguments. The court has reviewed the search warrants and the 36–page affidavit of agent Handley supporting both warrants. Detailed in the affidavit is a lengthy investigation of defendants Skinner, Yung and Peterson and their alleged business of selling illegal trust packages. In particular, the affidavit describes meetings by undercover officers with these three defendants and subsequent purchases of trust packages from Yung and Peterson. Further, the affidavit describes visits by undercover officers to the office located at 10644 Biscay Way, and surveillance of Yung and

has the government described which items of seized evidence it intends to use at trial.

Peterson going to the office located at Apartment 59, 10700 Coloma Road. Finally, the affidavit describes various comments made by Yung and Peterson to undercover agents indicating the types of equipment and information stored at each office. Based upon this information, the court finds that, at the time the warrant was issued, "the magistrate had a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found in the place to be searched." *Cook*, 949 F.2d at 292; *see also United States v. Rahn*, 511 F.2d 290, 292 (10th Cir.1975) (discussing timeliness of probable cause), *cert. denied*, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). Yung's motion is therefore denied.[13]

## III. Defendant Hemsley

Defendant Hemsley has filed a motion to suppress directed at: (1) all items seized at his residence/office at Apartment 59, 10700 Coloma Road, Rancho Cordova, California; (2) "[a]ny and all pre and post arrest statements"; (3) "[a]ny and all recordings, including but not limited to, telephone interception, telephone answer machines and body microphone recorders"; (4) "[a]ny and all forms, financial statements and documents filed with the Internal Revenue Service during the years 1986, 1987, 1988, 1989 and 1990"; and (5) "[a]ny and all identification of the defendant by use of photo line-ups, surveillance photos, in-person line ups, as well as any other out-of-court identification procedures."

Hemsley first argues that the search warrant was not supported by probable cause. The court rejects this argument. As the court noted above in reviewing defendant Yung's motion to suppress, a review of the warrant and supporting affidavit clearly indicates that the magistrate had a substantial basis for concluding that probable cause existed. *Parrish*, 925 F.2d at 1296.

**13.** Because the court finds that the magistrate had probable cause to issue the warrant, the court finds it unnecessary to specifically respond to each of Yung's arguments.

Hemsley also argues that the warrant failed to particularly describe the place to be searched and the items to be seized. The court finds no merit to this argument. Having reviewed the warrant, the court finds that it was sufficiently particular to allow the executing officers to reasonably ascertain and identify the place to be searched, *see Steele,* 267 U.S. at 503, 45 S.Ct. at 416, and to prevent a "general, exploratory rummaging" in Hemsley's belongings. *Snow,* 919 F.2d at 1461.

Hemsley next asserts a variety of arguments directed at the affidavit, the application for the warrant, the warrant itself, and the execution of the warrant. (see paragraphs c through i of Hemsley's motion). The court finds that Hemsley has failed to meet his burden on each of these arguments, *see Nunez,* 658 F.Supp. at 835, and the same are hereby denied.

Hemsley also seeks suppression of statements he made to the executing agents during the course of the search. In support of this argument, Hemsley claims that he was wrongfully detained during the search and was asked questions without being given a Miranda warning. The court finds no merit to this argument. Based upon the evidence presented at the hearing on the instant motion, the court finds that Hemsley was not placed into custody during the search. *See United States v. Crisco,* 725 F.2d 1228, 1231 (9th Cir.1984) (determination of whether a defendant was subjected to custodial interrogation is a factual determination), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); *see generally Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Even if the facts could be construed otherwise, the court finds that Hemsley's motion is without merit because the evidence indicates that the agents executing the search gave Hemsley a "modified" Miranda warning[14] prior to asking him questions. *See Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612.

Finally, Hemsley has raised a number of arguments that, as noted by the government, are properly raised only in a situation where a warrantless search has taken place.[15] The court denies these arguments as legally frivolous.

### IV. Defendant Skinner

Finally, defendant Skinner has filed a pro se motion entitled "MOTION TO SUPPRESS INFORMATION OBTAINED BY ELECTRONIC LISTENING DEVICES." In the motion, Skinner urges the court to "suppress" counts 1 through 5 of the indictment because certain meetings were apparently taped without the authorization of a judge. Upon review, the court finds the motion legally frivolous and without merit.

IT IS THEREFORE ORDERED that the defendants' motions to suppress (Doc. # 104, # 131, # 146, # 195 and # 210) are denied.

---

**14.** Handley testified that the "modified" warning was a non-custodial warning advising Hemsley of his rights.

**15.** For example, Hemsley argues that "[t]here were no exigent circumstances justifying or authorizing the search and seizure."