959 F.2d 243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clint NAGANO, Defendant-Appellant.
 No. 91-10055.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1992.
Decided April 9, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Clint Nagano appeals his conviction on bank burglary and larceny charges. He claims the district court erroneously denied his motion to suppress evidence that he claims was seized in violation of the Fourth Amendment. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 I. BACKGROUND
 
 3
 On the evening of January 30, 1990, Honolulu police arrested Nagano for several traffic violations. During a search of Nagano's briefcase, police discovered a large amount of cash and a notebook with notations that suggested a link between Nagano and a series of automatic teller machine burglaries.
 
 
 4
 For some time, the FBI had suspected Nagano of involvement in the burglaries. Based on evidence they had obtained earlier and on information discovered in the briefcase and notebook, the FBI obtained warrants to search the briefcase and two residences. During those searches, the FBI collected evidence implicating Nagano in the burglaries.
 
 
 5
 Nagano was indicted for charges related to the teller machine burglaries. At a suppression hearing, the district court concluded that the searches of the briefcases and the residences did not violate the Fourth Amendment.
 
 
 6
 Nagano entered a conditional plea of guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2) and reserved his right to appeal the district court's denial of his motion to suppress evidence.
 
 II. ANALYSIS
 
 7
 A. The search at the scene of Nagano's arrest
 
 
 8
 Nagano first argues that the district court erred by not suppressing evidence that police discovered when they looked inside the briefcase they found in his car.
 
 
 9
 We review the legality of a search de novo. We accept the district court's factual findings related to its legal determinations unless the factual findings are clearly erroneous. See United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989).
 
 
 10
 Police may lawfully search an automobile and any closed containers within the passenger compartment without a warrant when the search is made "as a contemporaneous incident of [the] arrest" of an occupant of the automobile. New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Parr, 843 F.2d 1228, 1229 (9th Cir.1988).
 
 
 11
 Nagano claims the search was improper because he was not under arrest when police searched the briefcase. In Parr, we determined that a motorist stopped for suspicion of driving with a suspended license and then detained in the patrol car was not under arrest, and so a search of the passenger compartment of his car while he was detained was not justified under Belton. 843 F.2d at 1231.
 
 
 12
 In Parr, the police officer ordered the suspect to remain in the patrol car while the officer searched the car and a gym bag he found in the car. Only after discovering a sawed-off shotgun, a shotgun shell, and stolen mail did the officer issue the defendant a citation for driving with a suspended license and unlawful possession of a firearm. The defendant was then released. We found that no arrest had occurred. We observed that while there is no bright-line test for determining when an investigatory stop becomes an arrest, a detention may become an arrest at the point a suspect is transported to the police station. Id. at 1231.
 
 
 13
 Nagano, unlike the defendant in Parr, clearly was under arrest before police examined the contents of his briefcase. Officer Jean Minic testified that she placed him under arrest and handcuffed him after she learned that his license was suspended. She said her decision to arrest him rather than to issue him a citation was based in part on his seemingly impaired condition and his companion's statements that he was taking Valium. Other officers confirmed her version of events.
 
 
 14
 Minic testified that after she arrested Nagano, she asked him if he wanted to take anything with him to the police station. She said he told her he wanted to take a briefcase that was in the car because it contained a substantial amount of money. Minic said she told Nagano the officers would have to look inside the briefcase to confirm the presence of the currency and to inspect the briefcase for explosives.
 
 
 15
 The officers opened the briefcase and quickly inspected its contents. This search occurred after Minic arrested Nagano, according to the officers' testimony. The district court in its order denying suppression stated that it "finds the testimony presented by Honolulu Police Department Officers Minic, Tong, Peterson and Babauta to be more credible testimony relative to the events which transpired on the night [of the arrest]."
 
 
 16
 This credibility determination was not clearly erroneous, and according to the officers' testimony, Nagano was under arrest before the briefcase was searched. The search therefore was incident to Nagano's arrest and thus constitutionally permissible.
 
 
 17
 Nagano argues that the district court found that Nagano was not arrested until after the search of the briefcase. While the district court in its order denying suppression discussed the search before it discussed Nagano's arrest, this order of discussion does not amount to a factual finding regarding chronology.
 
 
 18
 The district court explicitly found the officers' testimony to be more credible; the officers' testimony was unanimous on the chronology of the arrest and the search. The record supports a finding that the search was incident to arrest and the judge did not err in denying suppression of evidence discovered during that initial search.
 
 B. The decision to seize the briefcase
 
 19
 When the police arrested Nagano, he initially asked that they bring his briefcase with him to the police station "because it had a lot of money in it." After police confirmed that the briefcase contained cash, Nagano changed his mind and asked that they give it to his companion Kil Soon Pelekai, who was not under arrest. The police declined.
 
 
 20
 Nagano argues that the police were not justified in seizing the briefcase because Pelekai was willing to take custody of it at the arrest scene. The police, however, were aware the briefcase contained a large amount of cash. They did not know Pelekai's relationship to Nagano. The police were faced with the prospect of turning over the briefcase full of cash to a person who apparently was simply going to walk away from the scene.
 
 
 21
 In those circumstances, it was reasonable for the police to confiscate and inventory the contents of the briefcase in order to deter theft and false claims. Illinois v. Lafayette, 462 U.S. 640, 646 (1983).
 
 
 22
 C. The inventory search at the police station
 
 
 23
 Nagano claims the search of the briefcase and its contents at the station house exceeded the scope permitted by the inventory exception to the search warrant requirement.
 
 
 24
 Inventory searches do not require warrants and do not need to be supported by probable cause. Instead, police station personnel may search items in the possession of arrested persons for administrative reasons. "A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." Lafayette, 462 U.S. at 646. Inventory searches also may protect the police from dangerous articles in the possession of arrested persons. Id.
 
 
 25
 At the police station, Officer Jesse Babauta counted $17,000 in the briefcase and testified that he flipped through a notebook he found in the briefcase to see if it contained any more money. Babauta noticed the letters "IT" marked next to notes of times and locations. Because Babauta had participated in an investigation of thefts from several automatic teller machines, he recognized that "IT" could represent the "Instant Transfer" automatic teller machine network. He testified he then checked for other similar pages.
 
 
 26
 It was reasonable for Babauta to count the money. See U.S. v. Johnson, 820 F.2d 1065, 1072 (9th Cir.1987) (currency found in suspect's pocket counted and placed in envelope for safekeeping). It also was reasonable for Babauta to leaf through the notebook to see if anything was stuck inside. See United States v. Khoury, 901 F.2d 948, 959 (11th Cir.1990).
 
 
 27
 The problem, however, is that Babauta searched the notebook more thoroughly when he noticed the ATM notations. Babauta testified that once he saw the ATM notations on a page, "I proceeded to check if there were any other pages that were similar to this page."
 
 
 28
 The record also shows that Sergeant Kevin Kamatoto opened the notebook and showed it to FBI agents. While Babauta's initial cursory examination of the notebook was part of a proper inventory search, the later examinations of the notebook were investigatory in nature and should not have been conducted without a warrant. See Khoury, 901 F.2d at 958-60.
 
 D. The search warrants
 
 29
 The FBI used information obtained from the improper notebook search in affidavits used to obtain warrants to search the briefcase and its contents and two residences. We therefore consider the issue of whether the warrants would have been properly issued if the affidavits had not contained the information that was improperly obtained.
 
 
 30
 Nagano argues that without considering the fruits of the purported inventory searches, the magistrate would not have found probable cause to issue the warrants. We disagree.
 
 
 31
 "When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." United States v. Alexander, 761 F.2d 1294, 1300 (9th Cir.1985) (quoting James v. United States, 418 F.2d 1150, 1151 (D.C.Cir.1969)).
 
 
 32
 Information improperly obtained from the notebook was contained in affidavits supporting the application for each of the three warrants. The pertinent information stated that Officer Babauta told the FBI that when Nagano was arrested on traffic charges, he had in his possession "handwritten notes indicating that Nagano had been recording information about various ATMs and their cash replenishment schedules." When this information is redacted from each of the three affidavits, the affidavits still justify the issuance of search warrants.
 
 
 33
 Each of the affidavits described the teller machine thefts and the large amounts of currency stolen in those thefts, summarized information implicating Nagano in the thefts from confidential informants considered reliable by the FBI, and described how the briefcase with $17,000 in cash had been recovered from Nagano during his arrest.
 
 
 34
 With the other information provided in the affidavits, these crucial facts provided the probable cause necessary to issue the warrants to search the briefcase and its contents and the two residences.
 
 
 35
 The district judge properly found that the fruits of those searches, including the information from the notebook, should not have been suppressed.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3