**UNITED STATES of America,**
**Plaintiff,**

v.

**Kevin P. O'NEILL, et al., Defendants.**

**No. 97–CR–98.**

United States District Court,
E.D. Wisconsin.

April 7, 1999.

Eric J. Klumb, Paul L. Kanter, Milwaukee, WI, for plaintiff.

James C. Reiher, von Briesen, Purtell & Roper, Milwaukee, WI, for Johnson F. Blake.

Robert J. Penegor, Cameron & Penegor, Brookfield, WI, for James E. Hanson.

Mark S. Rosen, Rosen & Holzman, Waukesha, WI, for David A. Kadlec.

Pamela Pepper, Cubbie & Pepper, Ltd., Milwaukee, WI, for Allen J. McVay.

Franklyn M. Gimbel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Randall E. Miller.

Thomas Halloran, The Schoreder Group, S.C., Waukesha, WI, for William B. Brock.

Charles W. Giesen, Giesen Law Offices, Madison, WI, for Leslie J. Jensen.

Daniel Resheter, Attorney at Law, Milwaukee, WI, for Robert A. Kruppstadt.

Robert G. LeBell, Styler, Kostich, LeBell & Dobroski, Milwaukee, WI, for James E. Meinen, Jr.

Edward J. Hunt, Hunt Law Office, Milwaukee, WI, for Raymond L. Morgan, Jr.

Michael R. Barth, Burlington, WI, for Richard E. Mroch.

Christopher T. Van Wagner, Van Wagner Law Office, Madison, WI, for Harvey E. Powers.

Lew A. Wasserman, Wasserman Law Office, Milwaukee, WI, for James W. Schneider.

William O. Marquis, Milwaukee, WI, for Kevin P. O'Neill.

Dean A. Strang, Fitzgerald & Strang, Milwaukee, WI, for James C. Rostron.

Ann T. Bowe, Bowe Law Offices, Milwaukee, WI, for Carl J. Warneke.

## ORDER

STADTMUELLER, Chief Judge.

If wishes were Harleys, defendants, members of the Outlaws motorcycle gang, might ride into the sunset, leaving this case behind ... but wishes are not Harleys, nor do most of defendants' latest objections, which amount to little more than wishes, entitle them to relief. Defendants raise a host of challenges to Magistrate Judge William E. Callahan, Jr.'s November 23, 1998 orders and February 3, 1999 recommendation and order in this,

the fourth and final round of motions ("Round IV"), few of which bear fruit. The court will address the issues in the same order as presented by the magistrate where possible.

## I. MAGISTRATE CALLAHAN'S NOVEMBER 23, 1998 ORDERS

On November 23, 1998, Magistrate Callahan issued two orders, an "Order Re: Robert G. Lebell's Motion to Withdraw As Counsel" ("LeBell Order"), in which the magistrate denied James E. Meinen, Jr.'s counsel Robert LeBell's motion to withdraw, and an "Order Re: Government's Motion to Confirm and Continue Release and Detention Status of Defendants" ("Detention Order"), in which the magistrate granted the government's motion and ordered that the detention orders and bond conditions previously set under the original indictment shall remain in effect and unchanged under the superseding indictment. Defendants O'Neill, Meinen, McVay, Kruppstadt, Mroch, Hanson, Miller, Morgan, and Blake appeal from the Detention Order (and/or adopted others' appeals), and LeBell appeals from the LeBell Order. The government responds to the defendants' appeals from the Detention Order.

This court postponed ruling on these appeals while the Seventh Circuit contemplated similar issues on the defendants' appeals from this court's October 19, 1998 and November 2, 1998 orders. On December 24, 1998, the Seventh Circuit dismissed the appeals. On February 5, 1999, the Seventh Circuit issued an opinion explaining the reasons for its dismissal, but it declined to address the defendants' central argument, which is the same argument they raise in their appeals from the Detention Order, that the current indictment is not a superseding indictment but rather a new indictment:

The defendants argue vociferously that this was a "new" indictment, because the old one had been dismissed, while the government labels it a "superseding" indictment. While there may be a differ-

ence between these two animals, we do not find it important for the matter presently before us, and we therefore decline the invitation to enter this part of the fray. Whatever type of indictment it was, the defendants were arraigned under it on November 19 and 20, 1998.

*United States v. Powers,* 168 F.3d 943, 945–46 (7th Cir.1999).

The Seventh Circuit also explicitly avoided ruling on the Detention Order, holding that the defendants' notices of appeal "do not suffice to bring before this court any challenge to the magistrate judge's later order of November 23 continuing their detention under the November 10 indictment." *Id.* at 948–49. The Seventh Circuit thus reserved the consideration of this order for this court:

> It is true that the magistrate judge construed that indictment to be a superseding indictment and he concluded that it was not necessary for him to hold new detention hearings. Whether or not the judge properly interpreted the new indictment has nothing to do with the defendants' alleged rights under the October 19 order, which is the only one before us.... [B]oth parties will have ample opportunity before the district court to raise any points they have about the November 10 indictment, the continued detentions, or the merits.

*Id.* at 948–49. The mandate from these appeals issued on March 18, 1999 after the defendants elected not to file a petition for rehearing. Therefore, this court will now rule on the issues presented by the magistrate's November 23, 1998 orders.

### A. The Detention Order

#### 1. "New" Versus "Superseding" Indictment

■ The defendants first raise the largely semantic issue of whether the November 10 indictment is a "superseding" indictment, as this court, the magistrate, and the government has referred to it, or a "new" indictment, as the defendants wish to call it. The defendants do not rely on any authority in support of their argument other than a single sentence from the dicta of a concurring U.S. Supreme Court opinion stating that "[t]he term 'superseding indictment' refers to a second indictment issued in the absence of a dismissal of the first." *United States v. Rojas–Contreras,* 474 U.S. 231, 237, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring); *see also United States v. Hoslett,* 998 F.2d 648, 657 n. 11 (9th Cir.1993) (citing the same sentence from *Rojas–Contreras* ); *United States v. Long,* 900 F.2d 1270, 1275 n. 4 (8th Cir.1990) (same). The defendants, however, neglect to put this dicta into its proper context—Justice Blackmun added in the next sentence that "the [Speedy Trial] Act nowhere refers to a superseding indictment, and seems to assume that dismissal of the first indictment will *precede* issuance of the second. See 18 U.S.C. §§ 3161(d)(1) and 3161(h)(6)." 474 U.S. at 237, 106 S.Ct. 555 (emphasis added). The point of Blackmun's distinction was simply that he believed that these Speedy Trial Act provisions did not apply to the situation the court faced in that case, not that criminal defendants are entitled to a "get out of jail free" card when indictments captioned as "superseding" indictments are issued after dismissals of original indictments, as defendants argue. *Cf. United States v. Duque,* 62 F.3d 1146, 1149 (9th Cir.1995) (rejecting contention that because of *Rojas–Contreras* dicta, second indictment issued before dismissal of first indictment must be a "superseding" indictment).

More importantly, the Seventh Circuit, in discussing the same Speedy Trial Act provisions at issue in *Rojas–Contreras,* referred to an indictment returned *after* dismissal of an original indictment as a "superseding" indictment: "[S]ubsection 3161(h)(6) controls a situation where there is an *interval* between the time the original indictment is dismissed ... and the *superseding* indictment is returned." *United States v. Horton,* 676 F.2d 1165, 1170 (7th Cir.1982) (emphasis added); *see also United States v. Menzer,* 29 F.3d

1223, 1228 (7th Cir.1994) (same); *United States v. Badalamenti,* No. S.S. 84 Cr. 236(PNL), 1985 WL 2572, at *10 (S.D.N.Y. Sept. 19, 1985) (referring to a second indictment that would be returned after dismissal of a first indictment because of section 2517(5) violations, the same situation as in this case, as a "superseding" indictment). Therefore, the court holds that the second indictment in this case can properly be referred to as a "superseding" indictment.

The superseding-versus-new-indictment issue might have been an interesting and relevant debate if the Speedy Trial Act or the statute of limitations were the focus of defendants' appeals from the Detention Order, because those are the only situations in which it matters whether an indictment is a superseding indictment or a new indictment. *See, e.g., Rojas–Contreras, Hoslett, Long.* However, defendants fail to present any reason why the semantics of naming an indictment as "new" or "superseding" has any other relevance and instead offer fatuous and totally unsupported contentions such as that this court has no jurisdiction over the defendants if the indictment is called a new indictment rather than a superseding one. Unless the defendants raise statute of limitations or Speedy Trial Act objections in their appeals of the Detention Order, however, which they have not, the second indictment is valid whether it is called the "superseding" indictment, the "new" indictment, or the "blue," "red," or "purple" indictment. As the Seventh Circuit held, "[w]hatever type of indictment it was, the defendants were arraigned under it on November 19 and 20, 1998," 168 F.3d 943, 945–46, and the court thus has jurisdiction over the defendants. *Cf. United States v. Marzano,* 537 F.2d 257, 271 (7th Cir.1976) (holding that "[o]nce the defendant is before the court, the court will not inquire into the circumstances surrounding his presence there").[1]

## 2. New Detention and/or Bond Hearings

■ The defendants also argue that they are entitled to new detention and/or bond hearings. Again, even if the court called the second indictment the "new" indictment instead of the "superseding" indictment, which the court does not believe is the required course of action, that would not entitle the defendants to the relief they seek. As the government correctly notes, the defendants are collaterally estopped (or prohibited by the "law of the case" doctrine) from relitigating these issues absent new information not previously before the court. *See United States v. Rosenberger,* 872 F.2d 240, 242 (8th Cir.1989) (holding that a ruling on pre-indictment motion that search and seizure were legal collaterally estopped defendant from later moving to suppress evidence claiming that search and seizure were illegal); *Smith v. United States,* 406 A.2d 1262, 1263–64 (D.C.1979) (holding that "[f]or all intents and purposes, the instant case is the same action that was brought previously. We, therefore, find the application of the doctrine of the law of the case to be appropriate"); *United States v. Thoresen,* 428 F.2d 654, 665–68 (9th Cir.1970) (holding that even though a hearing to suppress allegedly illegally seized evidence occurred under a superseded indictment, the defendant may not relitigate the motion to suppress after reindictment); *United States v. Yung,* 786 F.Supp. 1561, 1564–65 (D.Kan.1992) (holding that when a court has given a party a full and fair opportunity to litigate a motion to suppress and then has decided the motion on the merits, the party may be estopped from bringing the same motion in subsequent litigation).

Similarly, in one of the only reported cases in which Fed.R.Crim.P. 12(h) was used (actually, Rule 12(b)(5), Rule 12(h)'s predecessor), the court disposed of motions made under the second indictment

---

1. This concept also bars relief for Meinen on his claim that he was unjustly deprived of a removal hearing before being sent from Illinois to Milwaukee for the November 19, 1998 hearing.

simply by referring to its discussion in the opinion issued under the first indictment. *See United States v. Schneiderman*, 106 F.Supp. 906, 926 (S.D.Cal.1952). In any event, the court will not preclude the defendants from reopening consideration of detention orders or bond conditions if they have new information that has a material bearing on those decisions (which they have not indicated). *See* 18 U.S.C. § 3142(f). Therefore, the court affirms the magistrate's order that no new detention/bond hearings are necessary.

### 3. Length/Manner of Detention

Aside from the new-versus-superseding issue, several defendants raise general objections to the length and manner of their detention in their appeals from the Detention Order.[2] Among those who raise these general objections, only O'Neill and Morgan cite any authority or even a theory (such as due process) that would allow them to achieve whatever relief they seek, presumably release from pretrial detention.

O'Neill cites two cases, *Parnell v. Waldrep*, 511 F.Supp. 764 (W.D.N.C.1981), and *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). Neither case helps O'Neill. *Parnell* is a section 1983 case dealing with convicted county jail inmates' rights to reading materials, legal assistance or law libraries, and exercise, none of which O'Neill contends are unavailable to him. O'Neill alleges that he has not been allowed to vote in violation of *McDonald*, but the Supreme Court actually held in *McDonald* that Illinois's refusal to furnish absentee ballots to pretrial detainees did *not* violate the detainees' constitutional rights, *see* 394 U.S. at 809–810, 89 S.Ct. 1404, so O'Neill is not entitled to relief on this basis, either.

Morgan raises the most lengthy objection to his detention, citing nearly twenty cases in which courts discussed whether detentions of various lengths violated due process. *See, e.g., United States v. Millan*, 4 F.3d 1038 (2d Cir.1993). But Morgan commits the cardinal sin of failing entirely to apply this string-cite chautauqua on the law to the facts of this case, thereby leaving the court to do its own analysis.[3] The court is aided, however, by Magistrate Callahan's thoughtful discussion of this issue in his February 3, 1999 Recommendation and Order Re: Round IV Motions ("Recommendation and Order"). *See id.* at 30–36.

The Seventh Circuit has held that "[t]o get to first base" on this issue, the defendant "must show that either the prosecution or the court has unnecessarily delayed in bringing the case to trial—maybe the prosecutor is stalling because he realizes his case is so weak that pretrial detention is the only punishment in fact he can impose on the defendant." *United States v. Infelise*, 934 F.2d 103, 104–05 (7th Cir. 1991). In *Infelise*, the court held that the defendants "failed to make the required showing" because there were twenty defendants in the case, they were accused of a variety of serious crimes, the government's case was not weak, and the evidence was voluminous. *See id.* at 105.

---

**2.** Interspersed with his general objections to the length of his detainment, Blake asks the court to lift the stay it imposed upon Magistrate Callahan's March 20, 1998 order setting Blake's bail in the amount of $350,000. The government responds that if Blake truly has raised sufficient property to satisfy the bond, he should immediately request a hearing. The government is correct. If Blake wants a hearing on this issue, the appropriate way to request it is not by appeal of an unrelated magistrate order but through a properly filed motion with attached documentation showing that Blake can post the required bond.

**3.** To the extent Morgan further articulates his due process arguments in his Objections to the Magistrate's Recommendation and Order on Round IV of Pretrial Motions ("Morgan's Round IV Objections"), the court will discuss those in this section of this order. To the extent he argues that the defendants' detention violates the double jeopardy clause, however, the court will address those objections later in the order.

The same may be said about this case. See Recommendation and Order at 32–35. However, the complicating factor is that the government bears some blame for the delay caused by the dismissal of the first indictment, which was not a factor in *Infelise*.[4] One of the cases Morgan cites, *United States v. Millan*, 4 F.3d 1038 (2d Cir. 1993), is instructive in this regard. In *Millan*, the district court held that the defendants' continued detention beyond 22 months, a delay caused partly by mistrials due to government agents' misconduct (which government lawyers failed to timely disclose), violated due process. *See id.* at 1040. The Second Circuit reversed, holding that the factor relating to the government's fault was not entitled to significant weight in the due process analysis because there was "no suggestion that this failure was intentional." *Id.* at 1045. The Second Circuit held that the defendants' high ·flight risk, the danger to any person or the community, and the absence of conditions of release (such as electronic surveillance) that would reasonably assure the appearance of the defendants and the safety of the community outweighed the 30 months or more of detainment and the government's share of the blame for causing the delay.

The court holds that *Millan* is persuasive and directly on point. As in *Millan*, there is no indication that the government's miscue was intentional, and one could argue that the misstep in this case was far less egregious than the government's mistakes in *Millan*. Furthermore, the government's flub only delayed this case a few months at most, with the rest of the delay attributable mainly to the "massive nature and complex scope" of the case. Recommendation and Order at 35. The defendants also must bear some blame in delaying the case through the time they have taken to prepare and to challenge the magistrate's and this court's rulings (by, for example, filing appeals adjudged moot by the Seventh Circuit). *See Infelise*, 934 F.2d at 104. Given the circumstances, this court finds that, as in *Millan*, the length of the detention and the government's partial fault in extending the time of this detention do not outweigh the defendants' flight risk, the danger to the community, and the absence of conditions of release that would reasonably assure the appearance of the defendants and the safety of the community, all findings the court has already made. Therefore, the court affirms the magistrate's November 23, 1998 "Order Re: Government's Motion to Confirm and Continue Release and Detention Status of Defendants."[5]

4. In his objection to the Round IV Recommendation and Order, Morgan objected not only to the government's "blunder" in causing the dismissal of the first indictment, but also to the government's alleged delay in providing some discovery material to defendants: "An additional blunder necessitating delay of this trial and extending incarceration of the defendants is the inexcusable delay in providing *Brady/Giglio* materials and other discovery." Morgan's Round IV Objections at 8. This single-sentence objection is just barely specific enough to trigger review of this issue under Fed.R.Civ.P. 72(b). *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739–42 (7th Cir.1999). The Seventh Circuit in *Johnson* also held, however, that if a jurisdiction has a local rule requiring a party to state the *basis* for such objection, as this district does (*see* Local Rule 13.03(c) (E.D.Wis.)), any failure to describe the basis for an objection relieves the district court of its obligation to conduct a *de novo* review. *See* at 742. An additional prob-

lem is this court's practical inability to assess the validity of this objection absent any argument or citation to authority or to the record. Therefore, the court will not attempt an unguided *de novo* review of the *Brady/Giglio* issue and will adopt the magistrate's recommendation on this point.

5. In Morgan's Round IV Objections, he also argues that "the Magistrate's recommendation is wrong" because it "fails to adequately consider ... the previous decision of the Seventh Circuit in *U.S. v. Portes*, and the decision of the United States Supreme Court in *Salerno.*" *Id.* at 10. In *United States v. Portes*, 786 F.2d 758· (7th Cir.1985), the Seventh Circuit stated that "at some point, the length of delay may raise due process objections and we urge that district courts expedite the trials of those detained pending trial." 786 F.2d at 768. Morgan neglects to add that the Seventh Circuit held in *Portes* that the defendant's due process challenge was premature and that the

## B. The LeBell Order

Meinen's counsel, Robert G. LeBell, appeals from the magistrate's November 23, 1998 LeBell Order, in which the magistrate denied LeBell's motion to withdraw. The magistrate stated that although he was not insensitive to LeBell's statements regarding the "dramatic toll" this case is taking on LeBell's law practice, granting LeBell's motion to withdraw "would have a severe negative impact on the court's ability to process this criminal proceeding in an efficient and timely fashion." LeBell Order at 2. The magistrate also rejected LeBell's argument that his withdrawal was proper at that time because the November 10, 1998 indictment was a new rather than a superseding indictment.

■ To the extent LeBell objects on the basis that the November 10, 1998 indictment is a new rather than a superseding indictment, the court rejects this argument for the reasons previously stated in this order. *See* Section I(A)(1), *supra*. To the extent LeBell objects that this case is taking a "dramatic toll" on his law practice, this court, like Magistrate Callahan, is also sensitive to and appreciative of the great effort this case requires of all involved, including defendants' attorneys. However, LeBell states in his affidavit that as of December 7, 1998, he has spent over 300 hours on this case, which is not what this court would consider a crushing workload when spread over one and a half years (it comes out to an average of roughly 17 hours per month). Furthermore, this court agrees with the magistrate that any hardship this case has caused is greatly outweighed by the prejudice that would be done to Mr. Meinen, the court, and all others involved if the court allowed LeBell to withdraw from the case after 22 months of voluminous pretrial motions, rulings, discovery, etc. Therefore, the court affirms the magistrate's November 23, 1998

"Order Re: Robert G. Lebell's Motion to Withdraw As Counsel."

## II. MAGISTRATE CALLAHAN'S FEBRUARY 31, 1999 RECOMMENDATION AND ORDER

### A. Miller's Objection to Recommendation and Order at 2–4 and 55–63

The magistrate denied Miller's motion to disclose certain sealed court records and grand jury materials and Miller's motion to compel additional discovery. February 3, 1999 Recommendation and Order Re: Round IV Motions ("Recommendation and Order") at 4 and 63. Miller objects. The court will address each objection in turn.

Miller argues that the court should disclose or unseal the following: (1) redacted scheduling sheets reflecting all time that the grand jury that returned the second indictment (the "Schultz" grand jury) expended in any way on the investigation that led to this indictment, on hearing witnesses pertinent to this indictment, or on considering this indictment; (2) an explanation whether any of the grand jurors serving on the grand jury that returned the second indictment also served on the grand jury that returned the original indictment (the "Foerst" grand jury); (3) those portions of the grand jury minutes relating to the second indictment that are necessary to prove or disprove the Schultz grand jury's access to transcripts from proceedings in front of the Foerst grand jury that included references to or excerpts of communications intercepted pursuant to Title III wiretaps; and (4) an indication of what tape-recorded evidence was presented to the indicting grand jury.

The magistrate denied these requests because he personally reviewed *in camera* all the grand jury transcripts pertaining to the identity of the grand jurors that hand-

Seventh Circuit "express[ed] no opinion as to the length of detention which would be constitutionally impermissible." *Id.* at 768 n. 14. Similarly, in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the U.S. Supreme Court stated that it "inti-

mate[d] no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747 n. 4, 107 S.Ct. 2095. Therefore, these cases are of absolutely no help to Morgan.

ed down each indictment and all the evidence that was presented to the second grand jury. The magistrate stated that he is satisfied that none of the grand jurors who sat on the Foerst grand jury were members of the Schultz grand jury and that all the evidence presented to the Schultz grand jury complied with the appropriate Title III disclosure requirements such that the problems plaguing the first indictment were not present in the second indictment.

Miller does not object to the magistrate's recommendation on the issue of grand jurors' identity. Therefore, the court will adopt the recommendation and order on that point. Miller's objection is essentially that he is not satisfied with the magistrate's *in camera* review of the materials presented to the grand jury. Miller argues that his counsel is entitled to review the materials to ensure that the government fully resolved the Title III problems with the first indictment.

■ Miller's position with respect to this objection is at odds with the position he took before the magistrate, in that he previously agreed to *in camera* review of the submissions made to the second grand jury. Miller has failed to show any particularized need for the grand jury materials, and the court fails to see why Miller needs to view the transcripts firsthand when previously he was willing to let the magistrate perform an *in camera* review. Therefore, I will adopt the recommendation and order on this point as well.

The government states that it has no objection to full disclosure of the entire record of the proceedings before Judge Clevert regarding disclosure and use of Title III intercepts. Therefore, the government is ordered to disclose transcripts and documents relating to those proceedings to the defendants. *See* Section II(B), *infra.*

The magistrate also denied Miller's motion to conduct additional discovery. Specifically, the magistrate denied 22 of Miller's 28 requests for discovery materials as moot, because the same requests were de-

nied by the court in its March 11, 1998 Order. Miller does not object to this portion of the recommendation. Therefore, the court will adopt the recommendation and order on this point.

The magistrate specifically ruled on six of Miller's requests for additional discovery. The court will address each of these in turn:

■ (1) Request No. 19 sought the original audio and videotape recordings made of Miller, either by Title III authorization or by other means. Miller argues that the copies provided by the government have gaps or breaks and that his expert needs the originals to determine whether they contain any anomalies that may call the authenticity of the original recordings into question.

The magistrate recommended that the government be ordered to turn over two of the originals to Miller for testing by his expert (Steven Cain) under specified conditions: a government expert or technical operating officer must convey the tapes to Cain's laboratory, be present while the tapes are being examined, and take custody of the tapes during any breaks in the testing. Miller's expert also must provide a copy of his report to the government.

Miller objects, but only to the extent that the government must turn over two tapes—UC189A and UC189B. The court will adopt the recommendation and order on this point but orders that the government turn over Miller's other requested tapes as well, UC160, UC161, UC162, UC189, UC218, UC158, UC163, and UC205, under the same testing conditions described above.

■ (2) No. 20 sought the production of all the original recording and monitoring equipment used to transmit and record Miller. The magistrate denied this motion on the grounds that Miller has not shown that the alleged anomalies in the tapes are the result of the equipment, that the recording devices are covered by a qualified privilege, and that in any event, any paper-

work indicating exactly which equipment was used to record Miller has been destroyed. Therefore, the magistrate concluded that even if Miller could make a showing that he was entitled to the actual recording equipment, there would be no way to determine which equipment was used to record Miller.

Miller objects, arguing that at the very least the government should supply his expert with representative samples of the equipment that was used to record him. Miller also asks the court to compel the government to disclose the nature of the requested records that were destroyed.

None of Miller's arguments carry the day. First, Miller's expert cannot state for certain that the alleged anomalies in the tapes were the result of the equipment or just the tapes. Thus, it appears that his questions may arise from mere supposition. Second, the court fails to see why the government should bear the burden and expense of allowing Miller's expert to review the equipment when Miller's expert cannot state with certainty that the equipment produced the alleged anomalies. In addition, it is beyond question that the government has an interest in protecting such sensitive information from public disclosure including investigative techniques and equipment. *See Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Angiulo,* 847 F.2d 956, 983 (1st Cir.1988); *United States v. Fernandez,* 797 F.2d 943, 952 (11th Cir. 1986); *United States v. Van Horn,* 789 F.2d 1492, 1508 (11th Cir.1986); *United States v. Harley,* 682 F.2d 1018, 1020 (D.C.Cir.1982). Additionally, Miller has failed to make any kind of substantial showing that his need for the recording equipment outweighs the government's compelling interest in keeping its investigations and investigative techniques from public disclosure.

Finally, even if the court were to order the government to turn over the equipment used to record Miller, complying with such a demand would be impossible given the fact that either the equipment or the records indicating the types of equipment used for recording have been destroyed. Therefore, the court will adopt the recommendation and order on this point.

■ (3) Request No. 21 sought any written agency records of any damage, modifications, or maintenance done to the recorders, accessories, and other related equipment used to make the recordings. The magistrate recommended denying this motion because the specific equipment cannot be identified and because any records pertaining to the equipment have been destroyed.

As stated above, either the records or the equipment have been destroyed. Therefore, in the unlikely event that the court were to order the government to produce the items for Miller, complying with such an order would be impossible. Therefore, the court will adopt this portion of the recommendation as well.

(4) Request No. 22 sought statements from the agents who made the recordings, describing exactly how each recording was produced and the conditions that existed at the time, such as:

a. the power source, etc.;

b. input, etc.;

c. environment surrounding recording, etc.;

d. background noise, etc.;

e. number of individuals involved in the conversation, etc.;

f. brand, format, place of purchase, etc.;

g. recorder operation, number of times recorder was turned on and off, etc.;

h. typed transcripts of the audiotape conversations, etc.

The magistrate recommended denying this request in part as moot and denying the request in part on the merits. Neither the government nor Miller objects to this portion of the recommendation and order. Therefore, I will adopt this portion of the recommendation and order as well.

(5) Request No. 23 sought all independent contemporaneous back-up audio and videotape recordings made by other equipment. The government states that it is willing to provide access to a single original of each recording for which a specific request and showing is made, subject to the same restrictions put on the other recordings. The magistrate recommended granting this request. Because none of the parties object, the court will adopt this portion of the recommendation as well. Therefore, in accordance with this motion, the government is directed to produce the originals of tape UC189A and UC189B subject to the restrictions found on page 58 of the magistrate's recommendation.

(6) Request No. 24 sought all documents itemizing the chain of custody of the recording and copying process of the original tapes and the sound recording devices utilized. The government responded by asking for Miller to clarify his request. Miller failed to do so. The magistrate recommended denying this request as moot. Miller does not object. Therefore, I will adopt this portion of the recommendation and order as well.

### B. Kruppstadt's Objection to Recommendation and Order at 4, 8–11

■ Defendants Kruppstadt and O'Neill object to the magistrate's recommendation that the court deny their motion to unseal the documents surrounding the government's application and Judge Clevert's November 9, 1998 order authorizing the disclosure of the Title III intercept information to the Schultz grand jury pursuant to 18 U.S.C. § 2517(5). Objections to the Magistrate's Order Dated February 3, 1999, Regarding Defendant Kruppstadt's Motion to Unseal Court Records; Defendant O'Neill's Second Submission on Objections to Magistrate Judge Callahan's Recommendation and Order Re: Round IV Motions (hereinafter "O'Neills Second Submission") at 5–6. However, the government does not object to the disclosure of the application, stating that "considering how much has already been disclosed to the defense on this subject, there would appear to be little justification for maintaining secrecy." Government's Response at 1. Therefore, the court will grant Kruppstadt's and O'Neill's motion to disclose the contents of the government's October 30, 1998 application to present Title III intercepts to the grand jury and Judge Clevert's November 9, 1998 order authorizing the same.

### C. O'Neill's First Objections to Recommendation and Order at 5–18

■ Defendant Kevin O'Neill objects to the magistrate's refusal to reconsider the question of whether the government's wire tap interceptions complied with Title III requirements. In refusing to consider O'Neill's arguments, the magistrate stated that "[the] question has already been resolved against O'Neill. I will not re-address it." Defendant Kevin O'Neill's Objections to Magistrate Callahan's Recommendation and Order Re: Round IV Motions (hereinafter "O'Neill's First Submission"); Recommendation and Order at 11 n. 6. Although O'Neill contends that "there is no authority for not re-addressing issues upon a dismissed indictment," O'Neill does not cite any authority supporting the proposition that aggrieved parties may relitigate motions after the government brings a new indictment. O'Neill's First Submission at 2.

Contrary to O'Neill's unsupported claim, the doctrine of collateral estoppel may prevent criminal parties from relitigating identical motions to suppress as they arise under a superseding indictment. *See, e.g., Smith,* 406 A.2d at 1263–64. In this case, O'Neill provides the court with neither evidence nor argument showing how the instant motion to suppress Title III evidence may differ from the motion litigated and denied as part of the "Round II" motions resolved by the court in its October 19, 1998 order. Additionally, O'Neill fails to show how the new indictment in this case differs from the previous indictment in such a way as to provide a new basis for motions to suppress Title III evidence.

Therefore, to the extent that O'Neill seeks to raise successive and repetitive motions to suppress Title III evidence based on minimization, the court will deny the motions because the court has already resolved the issues and they have become the law of this case. *See Rosenberger,* 872 F.2d at 242; *see also Smith,* 406 A.2d at 1263–64; *Thoresen,* 428 F.2d at 665–68; *Yung,* 786 F.Supp. at 1564–65.

Additionally, the court will deny O'Neill's objection to the magistrate's recommendation as it relates to Judge Clevert's decision to authorize the disclosure of Title III information to the grand jury pursuant to 18 U.S.C. § 2517(5). The defendant failed to sufficiently state concrete arguments or legal authority disputing the magistrate's recommendation in violation of Local Rule 13.03(c). *See Johnson,* at 741–42.

▉▉▉▉ However, the court will address the defendant's so-called "newly discovered issues" and evidence.[6] Courts may reconsider motions to suppress when new facts come to light. *See Rosenberger,* 872 F.2d at 242; 3 Charles Alan Wright & Arthur P. Miller, Federal Practice and Procedure, Federal Rules of Criminal Procedure § 676 (2d ed.1982). In this case, O'Neill attached an affidavit and several exhibits to his objections to the magistrate's recommendation. Although O'Neill first alluded to exhibits that could show that the government illegally monitored the so-called "bugged lamp" in his original motion to suppress Title III evidence filed on February 20, 1998, he had not disclosed the identity of these exhibits until he filed his objections to the Recommendation and Order on February 18, 1999.[7] Therefore, O'Neill effectively "sandbagged" Magis-

trate Judge Callahan, the government, and this court by choosing to withhold the identity of his "bugged lamp" evidence for almost one year. O'Neill further sandbagged the magistrate by first presenting his evidence in an objection to the Recommendation and Order. *See Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that ordinarily courts are not obligated to review evidence presented for the first time on appeal). The "same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court" applies to this situation as well. *Provident Bank v. Manor Steel Corp.,* 882 F.2d 258, 261 (7th Cir.1989) (citing *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir.1984)). Even if O'Neill had not known of the actual existence of the documents that he attached to his current objections, he could have at least provided the court with a proffer of the nature of his "bugged lamp" evidence.

Ordinarily, the court would simply refuse to examine evidence not provided to the magistrate as part of an original motion made in the time and manner specified by the scheduling order and by local rule. *See Johnson,* at 741–42. However, the court realizes that despite O'Neill's inappropriate conduct, he remains in custody, and the cause of justice should not suffer because of what appears to be a thoughtless error of judgment. Therefore, the court will remand this motion to Magistrate Callahan for the limited purpose of conducting expedited briefing and, if necessary, a hearing to determine whether O'Neill's newly submitted evidence demonstrates that the government used the bugged lamp to intercept conversations or

---

**6.** O'Neill also seeks to relitigate Title III issues surrounding the placement of an electronic listening device, contained in a lamp, into his house. O'Neill posits that perhaps "[w]hat the Court in its decision must have done is confused the confidential informant, Patricia Wolf with the cohabitant, Nanette Suchocki." O'Neill's First Submission at 3. The court, having reviewed its "Round II Order," finds no evidence of any such confu-

sion. October 19, 1998 Order at 12–17. At the time that the government placed the inactive listening device inside of the lamp, Patricia Wolf owned the lamp. Government's July 30, 1998 Response at 5.

**7.** For the court's decision as to the original "bugged lamp" motion to suppress, see the October 19, 1999 Order at pages 12–17.

other substantive information regarding O'Neill becoming the Outlaws regional president before obtaining court authorization for the intercept. *See* "Affidavit of William O. Marquis in Support of Reply to Government's Response to Motion to Dismiss and Suppress Under Title III." As part of the second round of motions in this case, the court resolved the legality of the government's placement of the listening device in O'Neill's home and of the government's pre-authorization monitoring of the signal in order to verify the successful installation of the device. *See* October 19, 1998 ("Round II") Order at 12–17. Therefore, the magistrate need not revisit those issues in conjunction with this limited remand.

**D. O'Neill's Second Objections to Recommendation and Order at 5–18**

In his second series of objections to the recommendation, O'Neill once again seeks to raise the same Title III arguments that the court considered as part of the "Round II" motions decided on October 19, 1998. *See* O'Neill's Second Submission. For the reasons stated above, the court will not join the defendant in his now second attempt to beat a dead horse. The doctrine of collateral estoppel prevents the defendant from re-visiting the "Round II" motions. *See Rosenberger*, 872 F.2d at 242.

Although O'Neill portends to object to many sections of the magistrate's recommendation, he neither offers statutory analysis nor cites case law in support of many of his broad and often wandering objections. Thus, the court will reject many of these objections without performing a *de novo* review. *See Johnson*, at 741–42; *United States v. Molinaro*, 683 F.Supp. 205, 211 (E.D.Wis.1988) ("[W]ithout specific reference to portions of the magistrate's decision and legal discussion on the objected portion, the district court's duty to make a *de novo* determination does not arise. The general statements that a party 'objects' and 'incorporates all arguments previously made to the magistrate' will not suffice."). Therefore, the court denies O'Neill's generalized objections that are dispersed throughout his lengthy submission. *See* O'Neill's Second Submission at 2–3, 8–9, 10–12.

However, in an overabundance of caution, the court will continue with a brief evaluation of O'Neill's largely unsupported and speculative objections. O'Neill objects to the government's presentation of "windfall" derivative evidence to the Schultz grand jury in obtaining the second indictment in this case. O'Neill asserts that the government illegally used information obtained from an unauthorized wire tap to encourage James Schneider to cooperate with the government and provide testimony in support of the second indictment. ·*See* O'Neill's Second Submission at 4, 6–7, 9–10. O'Neill contends that "Schneider agreed to testify only after the first indictment was handed down, in violation of Title III. Statements and testimony taken from Defendant Schneider are clearly the fruit of unauthorized Title III windfall evidence, its fruits, and the invalid indictment which was first gained based upon it." O'Neill's Second Submission at 5. O'Neill further explains the underlying rationale for his objections by asserting that "the defendant believes that the testimony presented to the first grand jury in violation of section 2517(5) will forever be tainted and cannot be reused." O'Neill's Second Submission at 7.

The government analogized these facts to the facts in *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). In that case, the Supreme Court determined that "[e]ven in situations where the exclusionary rule is plainly applicable, we have declined to adopt a 'per se or "but for" rule' that would make inadmissible any evidence, whether tangible or live witness testimony, which somehow came to light through a chain of causation that began with an illegal arrest." *Ceccolini*, 435 U.S. at 276, 98 S.Ct. 1054 (citations omitted).

In evaluating the evidence in *Ceccolini*, the Supreme Court looked to several fac-

tors relating to the tainted evidence. These factors included: 1) whether the testifying witness made the decision to testify under her own free will; 2) whether a substantial amount of time passed between the illegal search and the initial police contact with the witness; 3) whether a substantial amount of time passed between the initial government contact with the witness and that witness' testimony at trial; 4) whether the government knew of the witness' identity and her relationship to the defendant; and 5) whether the government sought to discover the inadmissible evidence in order to coerce the witness into testifying. *See* 435 U.S. at 275–280, 98 S.Ct. 1054. In weighing these factors against one another, the Supreme Court applied a fluid analysis, reasoning that:

> Obviously no mathematical weight can be assigned to any of the factors which we have discussed, but just as obviously they all point to the conclusion that the exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object.

*Ceccolini,* 435 U.S. at 280, 98 S.Ct. 1054.

In this case, the government responds to O'Neill's motion to suppress "windfall" evidence by showing that the contested wire tap evidence does not incriminate James Schneider, that Schneider decided to testify for the government under his own free will and with advice of counsel, that Schneider testified before the grand jury three years after the Title III interceptions took place, and that Schneider chose to plead guilty to the charges in this case. *See* Government's Response at 8–9. In support of these contentions, the government attached an affidavit executed by ATF Special Agent Sandra DeValkenaere.

■ In analyzing the effect of these facts within the Supreme Court's *Ceccolini* rubric, the court finds that the government correctly presented Schneider's testimony to the second grand jury. The court finds

no evidence that the micron-thin and largely hypothetical causal connection between Schneider's testimony and the government's unauthorized Title III disclosures to the first grand jury should play any role in limiting the validity of the second indictment. Therefore, the court will deny O'Neill's objections as they relate to the so-called "windfall" Title III evidence.

O'Neill also objects to the magistrate's recommendation as it relates to the presentment of grand jury transcripts from the Foerst grand jury proceedings to the Schultz grand jury. *See* O'Neill's Second Submission at 6–7. O'Neill contends that "the testimony presented to the first grand jury in violation of section 2517(5) will forever be tainted and cannot be reused." *Id.* However, O'Neill does not elaborate upon his argument that the transcripts have become tainted, leaving the court to conclude that the government properly presented the Foerst grand jury transcripts to the Schultz grand jury.

■ Section 2517(5) of Title 18 governs subsequent authorization for disclosure of Title III intercept information to other law enforcement bodies. Therefore, when the government presented Title III intercept information to the Foerst grand jury before it obtained subsequent authorization for disclosure pursuant to 2517(5), the grand jury, not the Title III evidence, became tainted. Therefore, the government successfully cured the Foerst grand jury defect by securing subsequent authorization to disclose the Title III intercept information pursuant to section 2517(5) and then presenting the information to the new, "uninfected" Schultz grand jury.

O'Neill further objects to "any rationale which seeks to allow evidence gained in violation of Title III and its unauthorized use to stand under any good faith exceptions." O'Neill's Second Submission at 7. In support of this motion, O'Neill claims that the magistrate's reading of *United States v. Puglia,* 8 F.3d 478 (7th Cir.1993), "takes us dangerously close to a *Leon* good

faith exception." O'Neill's Second Submission at 7 (referring to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). However, a review of the *Puglia* decision reveals that the Seventh Circuit held in that case that the exclusionary rule does not apply to grand jury proceedings. *See Puglia*, 8 F.3d at 482–83. Nowhere in the decision does the Seventh Circuit mention good faith exceptions to the exclusionary rule. *See id.* This analysis renders O'Neill's objections specious, and the court thus will deny his objections as to this concern.

Finally, O'Neill objects to the magistrate's finding that the government's application complied with the substantive requirements for a section 2517(5) post-interception application. In evaluating the government's application, the magistrate found that the submission complied with the requirements set forth by the Seventh Circuit. *See United States v. Arnold*, 773 F.2d 823 (7th Cir.1985). The court, having reviewed the *Arnold* case and O'Neill's objections, finds that the objections bear almost no resemblance to the *Arnold* factors as discussed in the magistrate's recommendation. Therefore, the court will adopt the magistrate's recommendation and will deny O'Neill's objections as to the government's subsequent section 2517(5) application.[8]

### E. Rostron's and O'Neill's Objections to Recommendation and Order at 19–27

Both Rostron and O'Neill object to the magistrate's approval of the manner in which the government presented information to the Schultz grand jury. *See* O'Neill's Second Submission at 5, 8–9; Defendant Rostron's Objections to Recommendation and Order (hereinafter "Rostron's Objections") at 2–7. In an effort to resolve the defendants' various objections to the manner in which the government conducted the Schultz grand jury proceedings, the parties agreed that the

magistrate would undertake an *in camera* examination of the Schultz grand jury transcripts and that the magistrate would also review all the materials presented to the Schultz grand jury. *See* Recommendation and Order at 24–25.

After reviewing all the pertinent information *in camera*, the magistrate concluded that in his opinion "the transcripts clearly reveal that the Schultz grand jury at all times functioned as 'the grand jury that the Fifth Amendment to the United States Constitution guarantees.'" Recommendation and Order at 26 (citing Rostron's Motion to Dismiss). Rostron objects to the magistrate's determination, claiming that "[i]n the end, the magistrate did not make a convincing argument that the Schultz grand jury truly acted as the independent buffer between citizen and the government that the Fifth Amendment requires in this complex case." Rostron's Objections at 7. This objection demonstrates that Rostron, O'Neill, and perhaps other defendants have misconstrued the true purpose and function of the grand jury in criminal prosecutions. The court finds that not even through the most tortured and perverse construction of applicable statutory and case law could the magistrate judge find himself in a position of having to "convince" the defendants to set aside their every qualm, real or imagined, regarding the minute details of the Schultz grand jury proceedings.

█ The court reminds the defendants that "because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside," the courts generally do not exercise supervisory authority over grand jury proceedings. *See United States v. Williams*, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). Because the courts do not supervise the grand jury, "many constitutional protections afforded defendants in criminal proceedings have no application to grand jury proceedings because the grand jury is

---

**8.** However, the court will grant Kruppstadt's request to disclose the contents of the subse-

quent section 2517(5) disclosure application. *See* Section II(B), *supra*.

an accusatory, not adjudicatory, body." *Puglia,* 8 F.3d at 482 (citing *Williams,* 504 U.S. at 49, 112 S.Ct. 1735). Furthermore, "[g]iven the grand jury's operational separateness from its constituting court, it should come as no surprise that [the Supreme Court has] been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." *Williams,* 504 U.S. at 49–50, 112 S.Ct. 1735. Therefore, the magistrate's acquiescence to conduct the *in camera* review of the grand jury proceedings extends far beyond the supervisory role envisioned by the Supreme Court in *Williams,* and this court will not entertain any further exploration or groundless supposition.

■ In addition, this court will not scrutinize the magistrate's careful review of the grand jury materials. The district court may decline to exercise its *de novo* discretion in reviewing a credibility determination made by the magistrate judge. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Indeed, the court may give the magistrate's credibility determinations such weight "as their merit demands." *Id.* If after a careful review of the record a "district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir.1995) (citing *Raddatz,* 447 U.S. at 676, 100 S.Ct. 2406). Therefore, the court will adopt the magistrate's recommendation and will deny Rostron's and O'Neill's objections as they relate to the adequacy of the Schultz grand jury proceedings.

### F. McVay's and Morgan's Objections to Recommendation and Order at 28–36

Magistrate Callahan recommended that McVay's and Morgan's motion to dismiss the November 10, 1998 superseding indictment based on the double jeopardy clause of the Fifth Amendment be denied. *See* Recommendation and Order at 36. McVay objects, arguing that the magistrate erroneously rejected the double jeopardy argu-

ment in holding that jeopardy has not attached in any of the defendants' cases. *See id.* at 30. Morgan echoes this objection and adds that the length of his detention also violates his due process rights. To the extent Morgan (and/or McVay) argue that the detention violates due process, the court rejects this argument for the reasons the court previously stated in affirming the magistrate's November 23, 1998 Detention Order. To the extent McVay and Morgan argue that the magistrate was wrong in rejecting their double jeopardy argument, the court will now address that issue.

■ In this, the fourth and final round of our pretrial contest (where the questions are harder and the stakes are higher), the answer is, "denied for lack of case law or statutory support," and the correct question is ... "What will the court do with defendants' double jeopardy argument?" In other words, the court holds that the magistrate was correct in finding that defendants' double jeopardy arguments must fail because "jeopardy has not yet attached in any of the defendants' cases." *Id.* at 30. The magistrate cited *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), for the bedrock principle that jeopardy does not attach before trial: "The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.'" *Id.* at 388, 95 S.Ct. 1055. The magistrate correctly held that jeopardy had not attached in any of the defendants' cases because a jury has neither been empaneled nor sworn (nor indeed even become a gleam in Themis's blindfolded eye) and no trial court has begun to hear evidence, and therefore defendants' double jeopardy argument was without merit. *See* Recommendation and Order at 30.

Morgan objects that instead of relying on *Serfass,* the magistrate should have relied on the Supreme Court's more recent

decision in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), because the *Hudson* Court overruled *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in which the Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. 1892. Morgan notes that the *Hudson* Court overruled *Halper* in part because *Halper* required a comparison between the "sanction[s] actually imposed" under the civil and criminal proceedings, which "flies in the face of the notion that the Double Jeopardy Clause forbids the government from even '*attempting* a second time to punish criminally.'" 522 U.S. at 102, 118 S.Ct. 488 (emphasis in original) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938)).

The court is hard-pressed to determine what, if anything, these opinions have to do with this case, as the government has done nothing akin to imposing a criminal punishment and then seeking a punitive civil sanction. If these decisions have any relevance at all, they actually hurt Morgan's argument for the expansion of the double jeopardy clause to cover alleged multiple criminal punishments before jeopardy attaches, because while the *Halper* Court expanded the double jeopardy clause to prohibit multiple punishments whether they were civil or criminal, the *Hudson* Court reversed that trend by reverting to the rule that only multiple criminal punishments offend the double jeopardy clause. *See Hudson*, 522 U.S. at 98, 118 S.Ct. 488 (noting that the Court granted certiorari "because of concerns about the wide variety of novel double jeopardy

claims spawned in the wake of *Halper*"). Therefore, the court overrules Morgan's double jeopardy objection.

 McVay also objects to the magistrate's rejection of his double jeopardy argument, but he takes a different approach than Morgan. McVay argues that Magistrate Callahan "erroneously" ignored "an entire series of·cases which holds that the double jeopardy provision prohibits excessive pre-trial detention when that detention crosses the line from preventative measure to punishment." McVay's Objections at 2. McVay then string-cites seven cases that allegedly stand for this double-jeopardy proposition. In fact, none of these cases even mention the words "double jeopardy," much less stand for the proposition McVay says they represent.[9] Instead, these cases discuss whether pre-trial detention violates due process, an argument the magistrate and this court have already considered and rejected. Therefore, the court overrules McVay's objection and adopts the magistrate's recommendation on this point.

### G. Mroch's and Kruppstadt's Objection to Recommendation and Order at 39–46

The magistrate denied Mroch's and Kruppstadt's motion to suppress evidence seized by law enforcement officers during the course of two searches. Kruppstadt argues that the evidence seized during the search of 1228 Hayes Avenue, Racine, Wisconsin on or about May 3, 1995 should be suppressed. Mroch argues that the evidence seized during the search of 7332 W. 59th Street, Summit, Illinois on or about June 10, 1997 should be suppressed. Mroch and Kruppstadt object.

As support for their arguments, both defendants claim that "the use of tape

---

9. This egregious mis-citation is a waste of everyone's time and a violation of the court's trust. The court must remind Mr. McVay's counsel that in the Seventh Circuit, "[c]riminal defendants and their lawyers must abide by the rules that apply to other litigants, including the principle that litigating positions must have some foundation in existing law or be supported by reasoned, colorable arguments for change in the law." *State of Wisconsin v. Glick*, 782 F.2d 670, 673 (7th Cir. 1986) (citations omitted).

intercept material relating to offenses other than those specified in the order of authorization under Title III in obtaining a search warrant is testimonial and as such is barred absent judicial authorization prior to use." Mroch and Kruppstadt's Objection at 3. In effect, the defendants argue that the respective searches are "tainted" because the affidavits filed by Special Agent David J. Darin (in Kruppstadt's motion) and Detective Charles Wasko (in Mroch's motion) in support of the search warrant applications contained references to information that had been gathered during the course of the Title III intercepts but were not specified in the original wiretap authorization. The defendants claim that the evidence must be suppressed. The defendants cite 18 U.S.C. § 2517(3) and (5) in support of this argument.

The magistrate denied the motions on the grounds that the defendants could have made the motion as part of the Round II series of motions and that it was therefore untimely at this stage and on the grounds that the use of the evidence was appropriate pursuant to 18 U.S.C. § 2517(2) and (5). *See* Recommendation and Order at 41.

■ A plain reading of 18 U.S.C. § 2517 reveals that the defendants' arguments must fail. The use of any information received through a wiretap by law enforcement officers in connection with their preparation of an affidavit in support of a search warrant is not "testimonial" in nature such that prior approval of a judicial officer is needed. Section 2517(5) provides that if a law enforcement officer intercepts evidence pursuant to electronic communications, the contents or derivative evidence thereof may be used or disclosed as provided in subsection (2). Subsection (2) states explicitly that:

Any investigation or law enforcement officer who, by means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties. 18 U.S.C. § 2517(2).

The "proper performance of his official duties" includes the use of the information for such uses as establishing probable cause to search. *See United States v. Vento*, 533 F.2d 838 (3rd Cir.1976). This is exactly what occurred in the present case. Therefore, both officers had every right to use the information gathered by electronic surveillance in their application for a search warrant. Accordingly, I conclude that the magistrate was correct in his conclusions and will adopt this portion of the recommendation and order in full.

## H. Rostron's Objections to Recommendation and Order at 46–50

Rostron objects to the magistrate's recommendation that his motion "should be denied out of hand since such a motion and affidavit could have been filed in a timely fashion." Recommendation and Order at 47. Rostron argues that "[e]ven if O'Neill's statements in the second affidavit would have been available back in May, 1998, Rostron cannot be expected to have moved in May, 1998 for severance from co-defendants on an indictment that was not even handed up until six months later." Rostron's Objections at 9. However, the court has already considered Rostron's motion for severance from Kevin O'Neill in the third round of pretrial motions decided on December 15, 1998. In "Round III," the court held that:

Although the court does agrees that [O'Neill's] evidence might be somewhat probative, Rostron does not object to the magistrate's finding that all of the government's evidence will confirm that Rostron quit the Outlaws in October or November 1995. Recommendation and Order at 111–12. This finding suggests that evidence other than O'Neill's testimony exists which could prove what Rostron wants proven, so a severance would not be justified. *See United States v. Andrus*, 775 F.2d 825, 847 (7th

Cir.1985) (finding no deprivation of fair trial by denial of severance motion when other evidence available). More importantly, if Rostron is not accused of staying in the Outlaws after that point, it does not appear that evidence refuting this "amount[s] to a dramatic and convincing exculpation," as is required to justify severance. *See United States v. Abraham,* 541 F.2d 1234, 1240 (7th Cir. 1976). Therefore, the court will reject Rostron's objection and will adopt the magistrate's recommendation and order on this issue.

December 15, 1998 ("Round III") Order at 34. Because the parties have already fully litigated this issue and because the court has already issued an opinion on this matter, collateral estoppel prevents Rostron from raising the same arguments again. *See, e.g., Smith,* 406 A.2d at 1263–64. Therefore, the court will adopt the magistrate's recommendation and will deny Rostron's motion to sever.

As a final matter, Rostron submits a "proposed severance plan" which arranges the defendants into three groups for purposes of trial. *See* Rostron's Objections at 11–12. Rostron states that 13 of the 15 defendants have agreed to the plan. *See id.* at 12. Because Rostron submits the plan as a recommendation to the court, the court will take the recommendation under advisement should the court, for trial purposes, consider a discretional severance of the defendants in this case.

**I. McVay's Motion for a Bill of Particulars and Extension of Time to File Notice of Alibi With Regard to Drug Conspiracy Count and Jensen's Objection to Recommendation and Order at 51–54**

The magistrate denied Jensen's motion to exclude evidence or to dismiss the indictment. Jensen argues that the government has failed to provide him with significant portions of discovery material, including any plea agreements with any prospective government witnesses, any information regarding offers or promises of any concessions or benefits to any of those prospective government witnesses, or any criminal histories of those witnesses. In effect, Jensen claims that the government has failed to produce exculpatory and impeachment evidence pursuant to the court's December 30, 1997 Order. Jensen has not objected to this portion of the recommendation and order. Therefore, I will adopt this portion in full.

The magistrate denied Jensen's motion on the grounds that if the government has failed to turn over any exculpatory evidence pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), none of the defendants have been prejudiced because a trial date has yet to be set in the case. The magistrate cautioned the government, however, to be more diligent in its disclosure of exculpatory material. *See* Recommendation and Order at 52–53.

The magistrate's conclusion is correct, but based on the number of seemingly inexplicable prosecutorial errors which have already occurred in this case, the court will reiterate what the government's obligations are regarding Jensen's motion. Pursuant to this order and the court's March 11, 1998 Order, the government must turn over to any defendant any *Brady* evidence of which it is aware or should reasonably be aware *as the evidence becomes available.* The government also must complete a review of its files and turn over to the defendants' counsel within thirty (30) days of this order any *Brady* material not previously disclosed.

McVay filed a motion with this court seeking a bill of particulars and an extension of time to file his notice of alibi with regard to the drug conspiracy count. McVay's motion is based on his contention that it is impossible for him to provide the government with any alibi witnesses that he may call when he does not have the exact dates or times when he is alleged to have participated in the conspiracy.

McVay's motion presents a more complex problem. Obviously, the portions of

the indictment alleging a drug conspiracy occurring at unspecified locations between January 1, 1989 and June 10, 1997 is extremely broad, making it nearly impossible for anyone to provide a list of alibi witnesses to refute such charges. The court believes this matter to be better resolved through more effective communication between counsel for the parties, including but not necessarily limited to the government identifying specific dates, events, or transactions relevant to their request for alibi witnesses related to the conspiracy in question. As a result, the court need not reach the merits of McVay's motion in this order and will deny the motion for a bill of particulars. The denial, however, is without prejudice. McVay may renew the motion if the information provided by the government does not reveal sufficient detail so that he might adequately notify the government of his alibi witnesses.

### J. Mroch's Objection to Recommendation and Order at 64–66

The magistrate denied Mroch's motion for a speedy trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). The magistrate based his decision on 18 U.S.C. § 3161(h)(8)(A), which permits a continuance of the time limits found within the Speedy Trial Act when "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *See* 18 U.S.C. § 3161(h)(8)(A); Recommendation and Order at 66. Mroch objects.

■■■ Mroch's objection is essentially that he has been held for nearly two years without a trial. Mroch argues that he filed his demand for a speedy trial within 70 days on November 18, 1998, and that he should have been brought to trial by February 7, 1999.

The court is mindful of how long many of the defendants have been held without a trial. However, this case is extremely complex with seventeen defendants each represented by different counsel. Hundreds of motions have been filed by the defendants. The magistrate and this court

continue to be faced with sophisticated legal questions regarding the admissibility of evidence and severance which cannot be decided without careful consideration given to both the government's right to prosecute the case and each defendant's constitutional rights. A primary example of this problem is best seen by referring to the court's dismissal of the first indictment on October 19, 1998.

Therefore, the magistrate was correct in deciding that the time limits applicable under the Speedy Trial Act must give way to the interests of justice in this case pursuant to 18 U.S.C. § 3161(h)(8)(A), and I will adopt this portion of the recommendation and order as well.

### III. CONCLUSION

For the aforementioned reasons, the court rules accordingly on the defendants' objections. The court will continue its established practice of adopting without review any recommendation to which no objection is made. *See Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that "[s]ection 636(b)(1)(C) ... does not require any review at all ... of any issue that is not the subject of an objection").

Accordingly,

**IT IS ORDERED** that the motions to adopt submitted by defendants Blake (1006), Brock (835, 986 and 996), Hanson (857, 960, 975, 994 and 1026), Jensen (903, 1009, 1010), Kadlec (1007), Kruppstadt (1002), Meinen (971 and 1003), Miller (963), Morgan (967 and 1014), Mroch (1015), O'Neill (1016), Powers (980 and 985), Rostron (993), and Warneke (841 and 1017) be and the same are hereby **GRANTED;**

**IT IS FURTHER ORDERED** that defendant O'Neill's "Appeal from Magistrate's Order" (825) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that defendant McVay's "Objection to Magistrate Judge's November 23, 1998 Order Re: Government's Motion to Confirm and Con-

tinue Release and Detention Status of Defendants" (828) be and the same is hereby **DENIED;**

IT IS FURTHER ORDERED that defendant Meinen's "Objections to Magistrate Judge's Order Regarding Government's Motion to Confirm and Continue Release and Detention Status of Defendants" (829) be and the same are hereby **DENIED;**

IT IS FURTHER ORDERED that defendant Meinen's "Objections to Magistrate Judge's Order Re: Robert G. LeBell's Motion to Withdraw as Counsel" (830) be and the same are hereby **DENIED;**

IT IS FURTHER ORDERED that defendants Kruppstadt's, Mroch's, Hanson's, Miller's, and Meinen's "Objections to the Magistrate's Order Dated November 23, 1998 Regarding Government's Motion to Confirm and Continue Release and Detention Status of Defendants" (831) be and the same are hereby **DENIED;**

IT IS FURTHER ORDERED that defendant Blake's "Objection to Magistrate Judge's November 23, 1998 Order Re: Government's Motion to Confirm and Continue Release and Detention Status of Defendants" (832) be and the same is hereby **DENIED;**

IT IS FURTHER ORDERED that defendant Morgan's "Objections to Magistrate William E. Callahan's Order Re: Government's Motion to Confirm and Continue Release and Detention Status of Defendants" (833) be and the same are hereby **DENIED;**

IT IS FURTHER ORDERED that defendant Morgan's "Amended Objections to Magistrate William E. Callahan's Order Re: Government's Motion to Confirm and Continue Release and Detention Status of Defendants, Amended to Correct Typographical Errors" (840) be and the same are hereby **DENIED;**

IT IS FURTHER ORDERED that Magistrate Callahan's November 23, 1998 "Order Re: Robert G. LeBell's Motion to Withdraw as Counsel" (813) be and the same is hereby **ADOPTED** and **AFFIRMED** by the court;

IT IS FURTHER ORDERED that Magistrate Judge Callahan's November 23, 1998 "Order Re: Government's Motion to Confirm and Continue Release and Detention Status of Defendants" (814) be and the same is hereby **ADOPTED** and **AFFIRMED** by the court;

IT IS FURTHER ORDERED that defendant Miller's "Motion to Compel Additional Discovery" (862) together with his objection (974) to the magistrate's partial grant and partial denial (959) of that motion be and the same are hereby **DENIED** in part and **GRANTED** in part and the magistrate's order be and the same is hereby **MODIFIED** as set forth in Section II(A) of this order;

IT IS FURTHER ORDERED that defendant Kruppstadt's "Motion to Unseal Judge Clevert's Authorization Order of November 1998" (859) together with his objection (989) to the magistrate's denial (959) of that motion be and the same are hereby **GRANTED** and the magistrate's denial be and the same is hereby **VACATED** as set forth in Section II(B) of this order;

IT IS FURTHER ORDERED that defendant O'Neill's "Motion to Dismiss Indictment and Suppress Evidence Gathered Under Title III" (860 and 881) together with his first objection (982) to the magistrate's recommendation (959) that the court deny that motion be and the same are hereby **REMANDED** to Magistrate Judge William Callahan for further hearings in accordance with Section II(C) of this order;

IT IS FURTHER ORDERED that defendant O'Neill's "Motion to Dismiss Indictment and Suppress Evidence Gathered Under Title III" (860 and 881) together with his second objection (992) to the magistrate's recommendation (959) that the court deny that motion be and the same are hereby **DENIED;**

IT IS FURTHER ORDERED that defendant Rostron's "Motion to Dismiss Second Indictment" (845) together with his objection (968) to the magistrate's recommendation (959) that the court deny that motion be and the same are hereby DENIED;

IT IS FURTHER ORDERED that defendant Morgan's "Motion to Dismiss: Double Jeopardy" (838) together with his objection (978) to the magistrate's recommendation (959) that the court deny that motion be and the same are hereby DENIED;

IT IS FURTHER ORDERED that defendants McVay's, Blake's, Jensen's, Kruppstadt's, Meinen's, Miller's, Morgan's (838 and 874), Mroch's, O'Neill's, Powers's, and Warneke's "Motion to Dismiss: Double Jeopardy" (874) together with their objection (1004) to the magistrate's recommendation (959) that the court deny that motion be and the same are hereby DENIED;

IT IS FURTHER ORDERED that defendants Mroch's and Kruppstadt's motions to suppress (858 and 882) together with their objection (988) to the magistrate's recommendation (959) that the court deny those motions be and the same are hereby DENIED;

IT IS FURTHER ORDERED that defendant Mroch's "Demand for a Speedy Trial" (798) together with his objection (979) to the magistrate's denial (959) of that motion be and the same are hereby DENIED;

IT IS FURTHER ORDERED that defendant Rostron's "Renewed Motion Instanter to Sever Co-Defendants and Proposed Severance Plan" (894) together with his objection (968) to the magistrate's recommendation (959) that the court deny that motion be and the same are hereby DENIED;

IT IS FURTHER ORDERED that defendant McVay's "Motion for a Bill of Particulars and Extension of Time to File Notice of Alibi" (1005) be and the same is hereby DENIED without prejudice;

IT IS FURTHER ORDERED that the defendants' remaining motions not accompanied by objections (850, 865–869, 876, 879, 883, and 906) be and the same are hereby DENIED, and the court ADOPTS the magistrate's recommendations as to each.